Constance Murphy, a Minor, by George Murphy, Her Father and Next Friend, Plaintiff-Appellant, v. Cory Pump and Supply Co., an Illinois Corporation, Defendant. Root Manufacturing Company, Inc., a Foreign Corporation, Defendant-Appellee.

Gen. No. 10,502.

Fourth District.

April 17, 1964.

Olsen & Cantrill, of Springfield, for appellant.

Giffin, Winning, Lindner & Newkirk, all of Springfield (James M. Drake, of counsel), for appellee.

DOVE, P. J.

In the spring of 1958, George Murphy, a farmer and father of the plaintiff, Constance Murphy, purchased a heavy duty, rotary type, riding power lawn mower from Cory Pump and Supply Company, a retail dealer, in Springfield. After using the mower at his home for some time, Mr. Murphy had some motor trouble and returned it to the Cory Company to have it repaired, and while being repaired, the Cory Company supplied Murphy with another power mower, identical in every respect with the one he had purchased. The mower purchased by Murphy and the mower the Cory Company delivered to Murphy's home for him to use while his mower was being repaired were manufactured by Root Manufacturing Company, a Kansas corporation.

After using the mower a half dozen times, Murphy instructed his daughter, Cheryl, how to operate it, gave her some rules and instructed her to watch for objects and not to hit them, to check the oil and to see to it that it did not run out of gas.

In the Murphy family were five children, Cheryl, the oldest, who in June 1958 was 12 years of age; Constance, then 7 years of age; Victoria, Patty and Linda. On June 20, 1958, Cheryl was operating this machine, mowing the lawn at the Murphy home. Near the area where Cheryl was mowing was a set of swings. On this day, Mr. Murphy had mowed the largest part of the yard, stopped the motor and was ready to return to the field. He helped Cheryl start the mower, cautioned her to be careful of the children, and told her that if anything went wrong she should shut off the mower. Constance and Victoria were playing in the yard. Their backs were toward the mower, and in trying to get out of the path of the mower, Constance slipped and fell. Her left leg came in contact with the rotary blade, causing injuries resulting in the amputation of her leg.

On October 20, 1959, the instant three-count complaint was filed. In the first count the plaintiff, Constance Murphy, sought a recovery from the said Cory Pump and Supply Company, a retailer of power lawn mowers. Count two was directed against the Root Manufacturing Company, the manufacturer of the mower, and by count three, the plaintiff sought a joint recovery against the manufacturer and the retailer. Counts one and three are not involved in this appeal.

Count two, so far as material to the issue presented for determination, alleged that defendant was engaged in the business of manufacturing gasoline powered, riding, lawn mowers, and sells them to retail dealers for resale; that prior to June 20, 1958, it sold to Cory

Pump and Supply Company one of its lawn mowers; that said mower was inherently dangerous in that it was so designed and manufactured that although the rotary blade appeared to be covered, there was no screen or bar lower than eight and three-fourth inches from the ground in front of the machine; that on reasonable inspection of said machine, it was apparent that no adequate protection was afforded children; that inadequate guarding of the blade was likely to injure and maim children who might be playing near and in front of said machine while it was in operation; that on June 20, 1958, while said mower was being operated by the sister of plaintiff, in the yard of the plaintiff, the plaintiff fell in the path of the mower and because of the lack of any guard on the front of the mower, plaintiff's left leg slipped into the rotary blade of the mower, and was so badly mangled that an amputation became necessary. It was then alleged that plaintiff at the time of her injury was seven years of age, and in the exercise of such due care and caution as could reasonably be expected of a child of her age.

The answer of the defendant admitted that it manufactured gasoline powered, riding lawn mowers, and sells them for resale to divers dealers, including Cory Pump and Supply Company, but denied all other allegations of count two of the complaint. Thereafter defendant filed its motion for a summary judgment supporting its motion by portions of discovery depositions of George Murphy, father of plaintiff, Constance Murphy, the plaintiff, Cheryl Murphy, her sister, and Thomas J. Cory, president of Cory Pump and Supply Company.

In support of its objections to the motion for summary judgment, plaintiff filed counteraffidavits, one by its counsel and another by George Murphy, the father of the plaintiff. Upon the hearing which fol-

lowed, the trial court sustained the motion of Root Manufacturing Company, Inc. and from an appropriate judgment in bar of the action and for costs, the plaintiff appeals.

Counsel for plaintiff state that no charge is made that there was any defect in the manufacture of this mower, or mechanical failure of any of its parts; that the charge is that the rotary blade appeared to be covered, but in fact it was without a screen or bar in front of the mower lower than eight and three quarters (8¾) inches from the ground, and that the negligence of the defendant consisted in designing and manufacturing a machine without installing appropriate guards in front of the blades. Counsel insist that whether defendant was so negligent was a factual question, and although the facts are not in controversy, plaintiff was entitled to have a jury determine whether defendant was guilty of such negligence, and if so, whether such negligence was the proximate cause of plaintiff's injuries. Therefore, concludes counsel, it was error for the trial court to render summary judgment.

The affidavits, depositions and exhibits, including photographs of, and the power mower itself, were before the trial court, and are before this court. A detailed description of the mower and its construction is found in the record. The purchaser of the mower, the father of the plaintiff, testified that he went into the retail store, operated by Cory Pump and Supply Company, and examined the mower two or three times before he purchased it. He testified that he observed the side rails and "probably did look at the underside," but perhaps, "overlooked the fact that the power mower had no front or rear guard rails." He testified that he knew there was nothing in front of the mower to prevent a rock from being thrown, and he so advised his children, and told Cheryl to watch

386

and be careful of the children and to stop the blade if the children came around while she was mowing.

The record discloses that when this mower was purchased by the father of the plaintiff, and when it was delivered to his home, a pamphlet or brochure was attached to the mower, which had been attached to it by the defendant manufacturer. This brochure said in part:

"Caution List for Power Mower Safety
and Operation"

"When starting, stand firmly. Always keep your feet away from the blade. Learn to disengage the clutch or to stop the motor quickly. Stop the motor whenever you leave the mower. Don't let children or pets play around the mower while operating. Be sure of balance on inclines. Clear the lawn of debris. Never overspeed the blade; leave the governor alone. When you want to work on the mower, disconnect the spark plug. Never reach under the mower; tip the machine over so you can reach the underside easily. Finally, keep fuel stored with care, in a tight container, in a ventilated space."

An examination of this mower discloses that there is a fender in front of the machine which is 8¾ inches above the ground. Beneath the fender, four or five inches, is an axle and on both sides there are slotted side rails. There was no guard in front of the rotary blade, and there was nothing in connection with the construction of the mower that would make it appear otherwise. No one could have been, nor is there anything in the record to show that anyone was, deceived or misled by the appearance of this mower. As suggested by counsel, the purchaser, the members of his family, and the operator of this machine, all recognized that this mower was not a harmless toy.

There is no conflict as to any fact or issue in this case. There was no guard in front of the blades of the mower, but no one was misled by its appearance. The purchaser of the machine had cautioned his children not to play around the mower when in operation, and on the occasion when plaintiff sustained her injuries, she attempted to get out of the path of the machine, but unfortunately slipped and fell and her sister, the driver of the machine, was unable to avoid striking her.

Counsel for plaintiff state that what this record discloses is that plaintiff was injured while in the vicinity of the mower while it was being used and operated for the purpose for which it was intended; that the theory upon which recovery is sought is that defendant designed and manufactured this power mower without installing appropriate guards in front of the mower; that while the affidavits, depositions, and the mower itself, all disclose the absence of a guard in front of the machine, there is nothing in the record to indicate that there was no need for a guard or that the designing and manufacturing of this mower without such a guard were proper.

Counsel argue that negligence may exist in the design and manufacture of a power mower, and that the defendant is liable to plaintiff for placing upon the market this machine, having omitted therefrom any screen or guard in front of the blades. Counsel insist that this omission was negligence, and whether it was negligence or not, and if it was, whether such omission was the proximate cause of plaintiff's injuries, were questions of fact which plaintiff was entitled to have submitted to a jury, and that the trial court erred in depriving plaintiff of this right, and in rendering a summary judgment against her.

The Practice Act provides that a defendant may, at any time, move, with or without supporting affidavits,

■■■■■■■■■■■■■■■■■■■■■■

for a summary judgment and that the judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Ill Rev Stats 1963, c 110, § 57.

■ ■ Summary judgment procedure is an important tool in the administration of justice, and its use is to be encouraged in a proper case wherein is presented no genuine issue as to any material fact. (Allen v. Meyer, 14 Ill2d 284, 292, 152 NE2d 576.) The allegations of the instant complaint were that while the rotary blade on this power mower appeared to be covered, there was not any screen or bar lower than 8¾ inches from the ground in front of the machine. The answer of the defendant denied this allegation, but from the affidavits, depositions and an examination of the machine itself, the only reasonable conclusion which can be arrived at is that the rotary blade was exposed, did not appear to be covered, and was not protected by any screen or guard. An averment of a pleading is insufficient to raise a genuine issue of fact in the face of an affidavit or uncontradicted testimony setting forth facts controverting the averments in a pleading. (St. Louis Fire and Marine Ins. Co. v. Garnier, 24 Ill App2d 408, 416, 164 NE2d 625; Roberts v. Sauerman Bros., Inc., 300 Ill App 213, 217, 20 NE2d 849; Winger v. Richards-Wilcox Mfg. Co., 33 Ill App2d 115, 178 NE2d 659; Killian v. Welfare Engineering Co., 328 Ill App 375, 66 NE2d 305.) The record in the instant case discloses what the essential, material facts are, and that they are not in dispute. The trial court, therefore, did not err in entertaining the motion of the defendant for summary judgment.

Counsel for appellant cite *Restatement of the Law of Torts,* section 398, which says:

> "Chattel Made Under A Dangerous Plan Or Design: A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

Counsel state that they have been unable to find any case entirely analogous to the instant case, but that the quoted section from Restatement of the Law of Torts states their theory in a most direct fashion. Counsel then cite Biller v. Allis Chalmers Mfg. Co., 34 Ill App2d 47, 180 NE2d 46; Beadles v. Servel, Inc., 344 Ill App 133, 100 NE2d 405; Craine v. Oliver Chilled Plow Works, 280 F 954; Allis Chalmers Mfg. Co. v. Wichman, 220 F2d 426; and Brooks v. Allis Chalmers Mfg. Co., 163 Cal App2d 410, 329 P2d 575, as illustrative of the principle for which they contend.

Biller v. Allis Chalmers Mfg. Co., 34 Ill App2d 47, 180 NE2d 46, supra, cited Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, Beadles v. Servel, Inc. & Union Gas & Elec. Co., 344 Ill App 133, 100 NE2d 405, supra, and other cases, and held that a complaint which charged that plaintiff, a farm laborer, sustained injuries as a result of a tractor manufacturer's failure to give warning of the dangerous propensities of propane gas used as a fuel, when permitted to escape, stated a cause of action. This case involves the failure to warn, not an alleged negligent design situation.

Beadles v. Servel, Inc. & Union Gas & Elec. Co., 344 Ill App 133, 100 NE2d 405, supra, was an action

brought to recover damages for personal injuries which the plaintiffs sustained when they were overcome by carbon monoxide gas, allegedly produced by a Servel refrigerator manufactured by defendant, Servel, Inc., and serviced by the defendant, Union Gas and Electric Company. This refrigerator required the burning of a gas flame, and the mechanism which produced the gas flame was so designed as to deposit particles of carbon near the flame. The mechanism became encrusted with carbon, restricting the flame and giving off carbon monoxide. What the court held in the Beadles case was that a manufacturer of a refrigerator which is not inherently dangerous, but which may become so because of negligent construction, may be liable to one who sustains an injury because of such negligent construction.

In Craine v. Oliver Chilled Plow Works, 280 F 954, supra, the complaint alleged that the defendant was a shipper of a potato digger, and placed it on a wharf of the Pacific Steamship Company, where the ship of the steamship company was taking on miscellaneous freight; that the potato digger was constructed with knives and other sharp parts which were concealed from view, and were not observable, and then charged that in shipping the potato digger, defendant negligently and carelessly failed to remove the knives and sharp parts or to box or cover or shield them, so that they would not have persons who were engaged in handling the machinery exposed to the danger of cutting their hands while carrying the same into the hold of the ship. The complaint then averred that the plaintiff, while engaged in carrying the digger across the floor of the hold of the ship, as he was required to do, caught the fore and middle fingers of his left hand in the knives and the other sharp parts of the digger, causing the plaintiff to lose his two fingers. The Pacific Steamship Company and the

Oliver Chilled Plow Works were the defendants. The Plow Works demurred to the complaint, and the trial court sustained the demurrer and dismissed the complaint, and the plaintiff appealed. In reversing the judgment of the trial court, the Circuit Court of Appeals held that a shipper of a potato digger owed to the employees of a carrier the duty to exercise reasonable care to see that the implement was in a reasonably safe condition for handling by the employees of the carrier. In this case the blades of the potato digger were concealed.

Allis Chalmers Mfg. Co. v. Wichman, 220 F2d 426, supra, was an action brought by an employee of the owner of a hay baling machine against the manufacturer thereof, to recover for injuries he received when his hand and leg were drawn into the compressing rollers of his employer's hay baling machine, which, he contended, he was operating according to the directions of the manufacturer's demonstrator-representative. Plaintiff based his action on two grounds: (1) that the demonstrator-representative of the manufacturer had given him improper directions as to the manner in which he might safely cause baling twine to become engaged with the rotating rollers of the machine, and (2) that the manufacturer, in the exercise of due care, omitted to equip the baler with a shield to safeguard against some of the dangers of the exposed pressure rollers.

The court, on a trial without a jury, found the defendant guilty in both respects, and further found plaintiff not guilty of contributory negligence, and rendered judgment for the plaintiff and against the manufacturer for $50,000. The Circuit Court of Appeals reversed this judgment and remanded the cause for a new trial, and in the course of its opinion, held that whether the manufacturer's agent had been negligent in instructing the plaintiff employee to operate

the machine, as the employee testified, and whether the manufacturer had been negligent in failing to provide shields, and whether plaintiff had been negligent in operating the machine, all presented issues for the trier of fact under Missouri law. The court then said that the rule that a reviewing court would not disturb findings of fact unless they were clearly erroneous, did not apply if the trial court committed an error of law which manifestly controlled his findings of fact. The error of law which the trial court committed was in treating certain evidence as negative which the appeals court held was not.

Brooks v. Allis Chalmers Mfg. Co., 163 Cal App2d 410, 329 P2d 575, involved a safety device, known as a "boomdog," which failed to operate, and permitted a crane to fall on decedent. On the theory that the negligent design rendered the safety device ineffective, the California court held that a jury question was presented. None of the cases relied on by appellant pass upon the question presented by this record. In the Brooks case, the manufacturer had designed a safety device and it was claimed it was negligently designed. In the instant case, the claim is based on the theory that the manufacturer failed to design a safety guard or protection of some sort which would have prevented plaintiff's injuries. The alleged defect in this mower was not latent or concealed. It was obvious to anyone. It was apparent to any observer that the revolving blades were not guarded, and if any part of the human body came in contact with the revolving blades when the machine was in operation an injury must follow:

As pointed out in his excellent address, on March 9, 1963, at the Institute on Continuing Education, as reported in its Negligence Law Forum booklet, pages 86–103 inclusive, Honorable John J. Sullivan of the Chicago Bar said that it should be remembered that the

theory of design negligence comes within the framework of a general tort negligence theory, and is limited by traditional negligence rules. The speaker drew a distinction between negligent manufacture and negligent design, stating that many cases involved both negligence of manufacture and design; that in the negligence of design situation, the contention is that the manufacturer has put numerous items of the product on the market, the design of which caused an injury when one was utilized, and quoted the duty of the manufacturer to so "plan and design an article and its method of construction so as to make it reasonably safe for the use intended and for any reasonably foreseeable use." The speaker then went on to say that in the design situation the problem is to show that even though the particular item of the product might be of ordinary quality, that this quality was not enough, and the duty of due care on the part of the manufacturer required him to design something safer for the consumer.

Kahn v. Chrysler Corporation, 221 F Supp 677, was an action by David Kahn, a seven-year-old boy, who, on September 25, 1960, was riding his bicycle on a street in Houston, Texas. While so doing, he drove his bicycle into the rear of a 1957 Dodge motor vehicle, which was designed and manufactured by the defendant, Chrysler Corporation. David was thrown from his bicycle and sustained substantial injuries, and subsequently brought this action to recover for the injuries he suffered. His complaint charged that these injuries were proximately caused by the negligence of the defendant in creating and designing this motor car " 'in such a manner that the fins of said vehicle were elongated and protruded past the remainder of the vehicle and made of sharp metal capable of cutting.' " Plaintiff opposed defendant's motion for summary judgment on the ground that the question

of whether or not the defendant was negligent in the manufacture and design of the motor vehicle is a disputed fact question. The court, however, held that there was no genuine issue as to any material fact stating that the only disagreement between the parties was whether or not the defendant had a duty to so design its motor cars so that an accident like the one under consideration could not happen, and concluded that the essence of plaintiff's complaint was that defendant owed to the plaintiff a duty to manufacture an automobile with which it was safe to collide. The court then went on to say that whether or not a legal duty exists on a given state of facts and circumstances so as to give rise to actionable negligence, on breach thereof, as well as the nature and extent of the duty, if any, is always essentially a question of law. The court then inquired whether there was a duty in the instant case, and stated that if there was, then there is a factual dispute over whether or not it was breached, but if no duty existed, then the motion for summary judgment should be granted. The court cited and commented upon Hatch v. Ford Motor Co., 163 Cal App2d 393, 329 P2d 605, and stated that the holding of the California court in the Hatch case should be followed. "Chrysler Corporation," concluded the court, "should not be required to anticipate all the possible ways in which a person may injure himself by falling against an automobile, nor should they have a duty to protect against such possible injuries. The duty of an automobile manufacturer extends to the ordinary use of the vehicle, and may even be such as to cover certain situations when the automobile is being negligently used, but the manufacturer has no obligation to so design his automobile that it will be safe for a child to ride his bicycle into it while the car is parked."

Hatch v. Ford Motor Co., 163 Cal App2d 393, 329 P2d 605, was an action by a six-year-old boy to recover from the Ford Motor Company damages he sustained when a pointed radiator decoration or radiator ornament pointed forward and fastened to the front and center portion of a motor vehicle, manufactured by the defendant, pierced his left eyeball, causing the loss of that eye. The complaint alleged that on June 30, 1955, this car was parked at the edge of Stansbury Avenue in Los Angeles; there were no sidewalks at this place, and as plaintiff was proceeding, on foot, on Stansbury Avenue, toward the front of said motor vehicle, he collided with said radiator ornament, with the result aforesaid. It was alleged that the accident was caused solely and proximately by the negligence of the defendant in failing to exercise reasonable care in the manufacture, assembly, and sale of said automobile, in that defendant manufactured said vehicle under a plan or design by which defendant utilized the decoration above mentioned, and thereby created " 'an unreasonable risk and danger that the anatomy of a person coming in contact with the front portion of the vehicle would be pierced, thus rendering the vehicle and decoration or ornament dangerous for the uses for which defendants manufactured the same,' " and in that defendants failed and refused to exercise reasonable care in the adoption of a safe plan and design for said vehicle and decoration or ornament.

In affirming the judgment of the Superior Court of Los Angeles County, which held that the second amended complaint did not state a cause of action, the court said that the only question presented was whether the defendant owed to the public, including the plaintiff, the duty to so design the vehicles sold by it as to prevent the type of injury sustained by

the plaintiff when the automobile was at rest properly parked upon a highway.

"The vehicle in question here," continued the court, "in the condition in which it was by the complaint alleged to be, was safe to park and could cause no harm except to one whose own acts or the acts of some third person caused him to collide with it. Such a risk is not one which the defendant was required to anticipate or to protect against. Richards v. Stanley, supra, 43 Cal 2d 60, 65–67, 271 P2d 23.

"Whether a duty on the part of the defendant exists is a question of law for the court. (Citations omitted.) The duty having been found to exist, whether it has been breached is a question of fact for the triers of the facts. (Citations omitted.)

"If we were to hold that there was a duty to render a vehicle safe to collide with rather than simply a duty to so manufacture it as to make it safe for the use for which it is intended, i. e., to move upon the highways or to be safely parked, that duty would apply not only to ornaments such as that in question here but to functional parts of the vehicle. If, in the present case, the minor plaintiff had stumbled as he approached the vehicle and struck his face against a headlight lens causing it to fracture and lacerate his eye, the question of duty to make the vehicle safe to collide with would be clearly presented under a claim that if the headlight lens had been made of safety glass the plaintiff would not have lost his eye; or, if the plaintiff had collided with the side of the car and his eye been impaled upon a radio antenna which had been telescoped so that its point

protruded but a few inches above the body of the car, again the claim might be made that this created a danger which might have been avoided by enclosing the radio antenna within the body of the car so as not to protrude therefrom. In other words, each case in which a person collided with a standing vehicle and received some injury from a part of the vehicle which injury he might not have sustained had the vehicle been constructed in some other manner would raise a question of fact as to whether the manufacturer was liable to that person. In effect the triers of the facts would be the arbiters of the design of automobiles and the standard of design would be determined not when the automobile was manufactured but after the occurrence of an accident."

In Campo v. Scofield, 301 NY 468, 95 NE2d 802, the sufficiency of a complaint against the manufacturer of an "onion topping" machine was challenged. The complaint charged that, while working on his son's farm, and while engaged in feeding onions into this machine, the hands of the plaintiff became caught in its revolving steel rollers and were severely injured. The negligence charged was that the manufacturer failed to equip the machine with a guard or stopping device. The Court of Appeals of New York stated that since there is no claim of privity of contract between defendant manufacturer and the plaintiff, the complaint could only be sustained and upheld because it states a cause of action in negligence. In holding that the complaint did not state a cause of action in negligence, the court said:

"The cases establish that the manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make

398

it free from latent defects and concealed dangers. Accordingly, if a remote user sues a manufacturer of an article for injuries suffered, he must allege and prove the existence of a latent defect or a danger not known to plaintiff or other users."

The opinion then continued:

"If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. Just as the manufacturer is under no obligation, in order to guard against injury resulting from deterioration, to furnish a machine that will not wear out (omitting citations), so he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. To illustrate, the manufacturer who makes, properly and free of defects, an axe or a buzz saw or an airplane with an exposed propeller, is not to be held liable if one using the axe or the buzz saw is cut by it, or if some one working around the airplane comes in contact with the propeller. In such cases, the manufacturer has the right to expect that such persons will do everything necessary to avoid such contact, for the very nature of the article gives notice and warning of the consequences to be expected, of the injuries to be suffered. In other words, the manufacturer is under no duty to render a machine or other article 'more' safe—as long as the danger to be avoided is obvious and patent to all.

399

"To impose upon a manufacturer the duty of producing an accident-proof product may be a desirable aim, but no such obligation has been—or, in our view, may be—imposed by judicial decision."

The opinion in the Campo case cites many cases involving injuries from farm machinery and implements in which the courts have refused to hold manufacturers negligent merely because the equipment was dangerous and no guards furnished. Among the cases referred to was Yaun v. Allis Chalmers Mfg. Co., 253 Wis 558, 34 NW2d 853, where the plaintiff, while working on a hay baler, fell in such a way that his arm was caught between the unguarded rollers of the machine and was crushed. He sued the manufacturer of the hay baler and recovered in the trial court. In reversing this judgment of the lower court, the Supreme Court of Wisconsin pointed out that the danger of the unguarded rollers was apparent, and added,

"If respondent's contention were sound, every meat grinder or other machine capable of mangling fingers would be an instrument the safe use of which would be guaranteed by the manufacturer."

Marko v. Sears, Roebuck & Co., 24 NJ Super 295, 94 A2d 348, was an action to recover damages for injuries which plaintiff alleged he sustained while using a rotary-type lawn mower, which he purchased from defendant. The mower was not self-propelled, but pushed by the operator. The blade was power-driven and rotates on its axis parallel to the ground. While operating this mower in his yard shortly after it was purchased, the plaintiff testified that ". . . 'it came in contact with a sharp—with an object that left a sharp noise as it hit it, like a clang, and the

machine bounced back, and as it bounced back it cut through my foot. I looked at the machine and the motor didn't stop, it kept on going.' "

The complaint in the Marko case consisted of three counts, but it is only the first count to which we refer. This count was based on the claim that the defendant was negligent in that the mower was not properly designed with a guard in the rear and the blade of the mower did not properly disengage upon striking an obstruction. The court held that the trial court properly dismissed this count of the complaint, as the evidence disclosed that the mower had an opening in the back of the casing of the mower, and there was no evidence that proper design required that such a mower have a guard in the rear, or that the blade of such a mower should disengage upon striking an obstruction.

██ It has been frequently stated that if an act or omission is negligent, it is because there has been some breach of duty, and if there is no duty, there can be no negligence. (Kahn v. Chrysler Corporation, 221 F Supp 677, 678, supra.) An undertaking is essential to liability because there can be no actionable negligence in the absence of a duty which has been violated. (Nelson v. Union Wire Rope Corp., 39 Ill App2d 73, 121, 187 NE2d 425.) Whether or not, under the facts, the law raises a duty is a question of law. When the law raises a duty on the defendant, the determination of whether or not that duty was properly performed is a question of fact. (Joy v. Chicago, B. & Q. R. Co., 263 Ill 465, 469, 105 NE 330; Masters v. Central Illinois Elec. and Gas Co., 7 Ill App2d 348, 368, 129 NE2d 586.)

██ In the instant case, whether it was the duty of the defendant manufacturer to provide a guard or shield for the blades of this mower, under the facts

401

as disclosed by this record, was a question of law. This mower would have caused no harm to plaintiff unless she, by her own acts, or by the acts of some third person, caused her to come in contact with it. Defendant should not be required to anticipate or protect against any such accident as the one which caused plaintiff's injuries. The mower functioned properly for the purposes for which it was designed; it was without any latent defect; and its functioning created no danger or peril not known to the user. As stated by Professor Bohlen in his work on Torts, and quoted in Campo v. Scofield, supra,

> " 'The manufacturer cannot be required to contemplate a misuse by any careless, ignorant, or incompetent person into whose hands the machine may come; injury through the medium of such an agency is neither a probable nor natural result of anything done or left undone by the maker.' "

The judgment of the Circuit Court of Sangamon County is affirmed.

Judgment affirmed.

REYNOLDS and WRIGHT, JJ., concur.