JOHN M. WEST, Adm'r of the Estate of Willie D. West, Plaintiff-Appellant, v. DEERE AND COMPANY *et al.*, Defendants-Appellees.

Second District   No. 2—89—0627

Opinion filed August 17, 1990.

REINHARD, J., dissenting.

Robert A. Clifford, Robert P. Sheridan, and Keith A. Hebeisen, all of Robert A. Clifford & Associates, of Chicago, for appellant.

Peter J. Magnani, of Peter J. Magnani & Associates, and Segal, McCambridge, Singer & Mahoney, Ltd., both of Chicago, Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, Clancy & Krippner, of St. Charles, and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Lisle, for appellees.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The instant action arose from a fatal collision which occurred on May 31, 1986, when a step van driven by decedent, Willie D. West, collided with a field cultivator being towed by a tractor. Plaintiff, John M. West, administrator of decedent's estate, brought an action in the circuit court of Kane County seeking damages from six defendants allegedly responsible for decedent's death. Among these defendants was Deere & Company (Deere), manufacturer of the cultivator. Plaintiff sued Deere under both strict liability and negligence theories for designing and manufacturing a product which was unreasonably dangerous and defective in its transport mode.

Deere filed a motion for summary judgment. Following a hearing on the motion, the trial court found in Deere's favor and granted summary judgment. Pursuant to Supreme Court Rule 304, the trial court found

no just reason to delay enforcement or appeal of the summary judgment order. 107 Ill. 2d R. 304(a).

Plaintiff appeals, contending that the trial court erred in entering summary judgment in Deere's favor because Deere's product, the 1010 field cultivator, was unreasonably dangerous as a matter of law.

The facts as set forth in the record show that on May 31, 1986, Willie West was driving a step van in an easterly direction on Route 38 in Kane County while transporting mail for Dougherty Mail Service, his employer. Just east of Meredith Road, Route 38 crosses over railroad tracks by means of a highway overpass. When West drove onto the overpass, a very large tractor driven by defendant Martin Boehne and pulling a field cultivator was traveling in the opposite direction on the overpass. Attached to the cultivator was a harrow manufactured by defendant Remlinger Manufacturing Co., Inc. Boehne had been working earlier at the nearby Sullivan farm, which was leased by defendant Michael Probst and was on his way to the residence of defendant James Meredith to refuel the tractor. Probst and Meredith, who farmed together, owned the tractor, cultivator, and harrow, and employed Boehne.

On the overpass the step van came into contact with a portion of the cultivator and harrow, resulting in West's death. The cultivator was a John Deere 1010 Drawn Field Cultivator with a working width of 30½ feet. It was a flexible, horizontal fold model with two outriggers, or wings, which were designed to fold flat for transport or storage. With the wings folded, the cultivator had a transport or storage width of 16 feet.

On the overpass there were concrete abutments or curbs, nine inches high on both the north and south sides of the roadway. The distance from curb to curb was approximately 30 feet 1 inch. The distance from the north curb to the southern or outer edge of the double yellow center lines was approximately 15 feet 5½ inches. Given its transport width of 16 feet, the Deere 1010 cultivator would extend from the north curb to a point about 6½ inches into the eastbound lane.

Probst and Meredith had purchased a Remlinger harrow in 1986 and attached it to the Deere cultivator. In attaching the harrow, Probst and Meredith altered the cultivator by adding to its frames structural steel parts furnished by Remlinger. Because of the addition of the Remlinger parts, the wings of the cultivator could not be folded flat, and when the wings of the cultivator with harrow attached were folded, the harrow extended beyond the cultivator.

Martin Boehne had driven the tractor and cultivator on the overpass numerous times and was well aware that the transport width of the cul-

tivator and the harrow was at least 16 feet. Boehne knew, as he drove onto the overpass immediately before the accident happened, that a portion of the cultivator and harrow would extend over the yellow center line and into the opposite lane of traffic. Boehne knew that there were alternate routes to his destination which did not require use of the overpass, but he chose the route using the overpass because it was quicker.

Prior to the accident in question, Boehne's employer, Michael Probst, also knew from personal observation that a portion of the cultivator would extend into the opposite lane when transported on the overpass.

At the time of the collision the amber warning lights on the tractor were activated. The two warning lights, which flashed simultaneously, were located on top of the tractor cab above the windshield and faced oncoming traffic. Also facing oncoming traffic was an amber reflector on the left-hand front extremity of the cultivator.

According to Boehne's testimony at his discovery deposition, decedent's step van hit a dip in the road immediately before the collision and swerved into Boehne's lane, crossing the double yellow center lines.

At the time of the accident, there was nothing mechanically wrong with the tractor. It operated properly and had nothing to do with the accident. There also was nothing mechanically wrong with the cultivator, and it, too, operated properly.

On June 27, 1986, decedent's representative instituted a suit against Martin Boehne, driver of the tractor, and his employers, James Meredith and Michael Probst. Plaintiff later amended his complaint to include Deere & Company, manufacturer of the cultivator; Grumman Allied Industries, Inc., manufacturer of the step van; and Remlinger Manufacturing Co., Inc., manufacturer of the harrow. In his fifth amended complaint plaintiff alleged that Deere designed, manufactured, and sold the cultivator; that the cultivator was defectively designed because its extension arms were of such excessive length that it could not be transported on the highway without blocking the oncoming lane of traffic; and that the design was also defective because the cultivator lacked a safety mechanism for folding the extension arms into a position safe for highway traffic and warning devices to alert oncoming vehicles that their traffic lane was blocked by the cultivator. Additionally, plaintiff alleged that the cultivator was designed so that its width exceeded the minimum width of highways required by Illinois law.

Deere denied the allegations of plaintiff's complaint and later filed its motion for summary judgment with supporting memoranda. Defendant also filed numerous depositions and affidavits in support of its motion as well as exhibits, which included photographs of the cultivator,

tractor, and the overpass, and the operator's manual for the cultivator. Plaintiff filed no counteraffidavits. In its motion and memoranda Deere detailed why the cultivator was not defective and why it did no more than furnish a condition that made the accident possible.

On May 25, 1989, the trial court heard arguments on Deere's summary judgment motion. The court found that injuries were not compensable in products liability cases if they were caused by inherent properties in the product which were obvious to all who came in contact with the product. The court stated that virtually all products were capable of producing an injury when put to certain uses, particularly when the injury resulted from a collision with a product. It was the court's opinion that the alleged defective condition of the cultivator did no more than make the injury possible. Accordingly, the court granted the motion for summary judgment and entered judgment in favor of Deere, finding that there was no just reason to delay enforcement or appeal. This timely appeal followed.

■ A motion for summary judgment should be granted only when the pleadings, depositions, admissions and affidavits establish that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 726-27.) Summary judgment is an expeditious method of disposing of a lawsuit and should only be allowed when the right of the moving party to summary judgment is free from doubt. (*Mijatov v. Graves* (1989), 188 Ill. App. 3d 792, 795.) If the facts of a case allow for more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied. *Palumbo v. Frank's Nursery & Crafts, Inc.* (1989), 182 Ill. App. 3d 283, 288.

In the instant case plaintiff contends that the trial court erred in granting Deere's summary judgment motion because a genuine issue of material fact existed as to whether Deere manufactured and distributed an unreasonably dangerous and defective product, the Deere 1010 cultivator. Plaintiff asserts that the cultivator's dangerous and defective condition proximately caused decedent's injuries. Specifically, plaintiff argues that the cultivator was unreasonably dangerous and defective because it was manufactured in contemplation that it would be transported on public highways, yet it was designed to be 16 feet in width when folded up for transport, a width which could not be safely transported on the highways; that the cultivator lacked mechanisms which would allow its width to be reduced to one which could be safely transported; and that the cultivator bore no warning lights or other warning apparatus to alert oncoming drivers to the dangers presented by its en-

croachment upon their lane of traffic.

Deere maintains that summary judgment was appropriate because the facts showed the cultivator did not subject those exposed to it to an unreasonable risk of harm. Rather, its transport and storage width, which was greater than a single highway traffic lane, was obvious and did no more than furnish a condition that made decedent's injury possible.

To recover in strict liability in tort, a plaintiff must prove that a decedent's injuries resulted from an unreasonably dangerous or defective condition of the product and that the condition existed at the time the product left the manufacturer's control. (*Mitchell v. Wayne Corp.* (1989), 180 Ill. App. 3d 796, 805.) The fact that an injury has occurred, in and of itself, is insufficient to show the existence of a product defect. (*Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432, 437.) The plaintiff must prove that the injuries derived from a distinct defect in the product which subjected those exposed to the product to an unreasonable risk of harm. (172 Ill. App. 3d at 437.) Injuries are not compensable under strict liability if they are caused by those inherent properties of a product which are obvious to all who come into contact with them. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 155.) Strict liability applies only when the product is dangerous to an extent beyond that which would be contemplated by the ordinary person with the ordinary knowledge common to the community as to its characteristics. 155 Ill. App. 3d at 155.

Whether the trial court properly held, as a matter of law, that the alleged defective condition of the cultivator in the instant case did no more than make the injury possible depends upon whether the trial court was correct in finding that the inherent danger in the cultivator in its transport mode was obvious to all who came in contact with the product. We agree with the trial court that it was.

In reaching its decision the trial court relied on three cases: *Hunt v. Blasius* (1978), 74 Ill. 2d 203; *Murphy v. Cory Pump & Supply Co.* (1964), 47 Ill. App. 2d 382; and *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121. In *Hunt* two occupants of a car were killed and three others seriously injured when the car left the paved portion of an interstate highway and collided with the post of an exit sign. A complaint was filed on behalf of the five occupants, alleging that the steel and concrete design of the exit sign post was defective because it was not reasonably safe in the event that automobiles left the paved portion of the highway and collided with the post. Plaintiffs maintained that the post, which was about five feet from the outer edge of the shoulder of the highway, should have been of a "break-away" design to avoid subjecting motor-

ists to an unreasonable risk of injury since collisions with posts support-
ing exit signs placed within a few feet of the highway were foreseeable.
The trial court rejected plaintiffs' theory and granted defendant's mo-
tion for summary judgment; the appellate court affirmed.

■ In affirming the judgment of both the trial and appellate courts,
our supreme court recognized:

> "A manufacturer is not under a duty in strict liability to design
> a product which is totally incapable of injuring those who foresee-
> ably come in contact with the product. Products liability does not
> make the manufacturer an insurer of all foreseeable accidents
> which involve its product. Virtually any product is capable of pro-
> ducing injury when put to certain uses or misuses. This is particu-
> larly true when injury results from a collision with the product.
> Injuries are not compensable in products liability if they derive
> merely from those inherent properties of a product which are ob-
> vious to all who come in contact with the product. [Citation.] The
> injuries must derive from a distinct defect in the product, a de-
> fect which subjects those exposed to the product to an *unreason-
> able* risk of harm." (Emphasis in original.) *Hunt,* 74 Ill. 2d at 211.

In *Murphy,* plaintiff, a bystander whose left leg was mangled by the
rotary blade of a riding power lawn mower after she fell in the path of
the mower, alleged that the manufacturer was negligent in designing
and manufacturing a mower which failed to provide any guard or shield
for the blades of the mower. In affirming summary judgment in favor of
the manufacturer, the court found that the manufacturer was not negli-
gent in failing to design a safety guard or protection of some sort which
would have prevented plaintiff's injuries. The court noted that the al-
leged defect in the mower was not latent or concealed but obvious to
anyone. The court stated that the mower would have caused no injury to
plaintiff unless she, by her own acts, or by the acts of some third per-
son, caused her to come in contact with it. The court concluded:

> "Defendant should not be required to anticipate or protect
> against any such accident as the one which caused plaintiff's in-
> juries. The mower functioned properly for the purposes for which
> it was designed; it was without any latent defect; and its func-
> tioning created no danger or peril not known to the user." *Mur-
> phy,* 47 Ill. App. 2d at 402.

■ In *Barr* plaintiff was standing in a roadway with his back to a
shoulder spreader which was being pushed by a road grader. The right
front wheel of the spreader struck the plaintiff's leg, pulling it under the
machine and resulting in its amputation. Plaintiff brought a strict liabil-
ity action against the manufacturer of the shoulder spreader, alleging

that the spreader was unreasonably dangerous in that its front wheels were not guarded. The court found that "[p]laintiff's injury was not proximately caused by any condition which made the shoulder spreader unreasonably dangerous, but rather from the conduct of plaintiff and the operator of the roadgrader." (*Barr*, 58 Ill. App. 3d at 127.) The court went on to state:

"If the allegedly defective condition of the product does no more than furnish a condition by which the injury is made possible and that condition causes any injury by the subsequent act of a third person, the two are not concurrent and the existence of the defective condition is not the proximate cause of the injury." *Barr*, 58 Ill. App. 3d at 127.

We believe that the trial court's reliance on the findings in *Hunt, Murphy*, and *Barr* was well-founded as shown through our discussion below.

In the instant case the undisputed facts were that on the date of the accident plaintiff's decedent was driving a step van; that the cultivator was being towed by a tractor driven by Martin Boehne at a slow speed from one farm to another along Route 38, a two-lane highway; that the warning lights on the tractor were activated; that the cultivator with the harrow attached was 16 feet in width in its transport mode and hung over into decedent's lane of traffic; and that the collision occurred while both vehicles were on the overpass.

Additionally, the deposition testimony of Martin Boehne showed that he knew as he drove onto the overpass that a portion of the cultivator and harrow would extend into the oncoming lane of traffic. Michael Probst, one of the owners of the cultivator and employer of Boehne, was also aware of this fact, having himself driven the cultivator and harrow over the overpass on several occasions. Boehne admitted that there were alternate routes to his destination, but he chose the one going over the overpass because it was the quickest.

The deposition of G. Dwight Hunter, a design engineer who had been manager of product tests for Deere, testified that in testing the 1010 cultivator consideration was given to its transportability, including its compatibility with the environment in which it was transported. Hunter stated that Deere knew that traffic lanes existed which were less than 16 feet in width and that the transportability of the cultivator could be restricted by the width of highways, bridges, farm lanes, and farm gates. Hunter related that in these instances, where passageways were narrow, it had been Deere's experience that farmers chose alternate routes or were assisted by others who watched for oncoming traffic.

Nevertheless, the evidence showed that the transport of the cultiva-

tor was an area of importance to Deere. Deere's representative, David Bucher, testified at his deposition that the transportation of Deere's products on the highway was an area of concern in its test program. Deere expressed its concern in the operator's manual for the 1010 cultivator by cautioning operators, both in the section dealing with preparing the tractor for transporting the cultivator and in the section dealing with preparing the cultivator for transportation, to use "accessory lights and devices for adequate warning to the operators of other vehicles."

Contrary to plaintiff's contention that the cultivator lacked any warning devices, the evidence showed that it was equipped with an amber reflector on its left-hand front extremity to define the left end of the machine for oncoming traffic and with a "slow moving vehicle" sign and two rear, red reflectors, one placed at the extreme right and the other at the extreme left of the cultivator so as to define the overall size of the machine. Additionally, the undisputed testimony of Boehne indicated that at the time of the accident the warning lights on the tractor pulling the cultivator were operating.

■ Plaintiff maintains that these warning devices were inadequate. However, plaintiff failed to provide the lower court with sufficient evidence to support a reasonable inference, rather than a guess, that the presence of adequate warnings would have prevented plaintiff's injuries. Here, the danger presented by a large tractor pulling an oversize piece of farm equipment behind it was obvious. Where the danger is obvious and generally appreciated nothing is gained by a warning and none is required. (*Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432, 439.) Nevertheless, there were warning devices. Even if, however, these devices had been shown to have been inadequate, it was unlikely that the presence of better warnings would have prevented plaintiff's injuries. It was the testimony of Boehne, the driver of the tractor, that upon approaching the overpass, decedent hit a dip in the highway and crossed over into Boehne's lane of traffic right before the collision.

■ Plaintiff maintains that the statements of Kevin Pazin and Eugene Pazin, who were traveling behind the cultivator at the time of the collision, constitute evidence that the step van was in its own lane at the time of the accident. Both men stated the step van was in its own lane of traffic but close to the center line directly before the impact. As Deere correctly points out, however, these statements were taken over the telephone by an investigator for codefendant James L. Meredith and then filed by Meredith's attorney with the trial court. The statements are unverified and unsworn to and, therefore, cannot be considered as evidence.

■ Plaintiff argues that the cultivator could have been designed so

that in its transport mode it was smaller in width and, therefore, safer for highway travel. However, plaintiff presented no evidence to the trial court regarding the availability and feasibility of alternate designs at the time of manufacture of the cultivator. Just because the design used by Deere may not have been the safest possible does not mean it was unreasonably dangerous. *Hunt v. Blasius* (1978), 74 Ill. 2d 203; *Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 366.

Moreover, the evidence presented to the court showed that the owners of the cultivator, Probst and Meredith, had altered the cultivator by removing the original Deere harrow and substituting the Remlinger harrow. This alteration not only prevented the wings of the cultivator from folding down flat during transport, as designed, but also extended the harrow beyond the width of the wings.

■■ We find meritless plaintiff's assertion that the State's failure to authorize the transport of a 16-foot-wide load on the highway shows that the cultivator's width made it unreasonably dangerous. Contrary to plaintiff's position, transport of the cultivator was specifically authorized by statute. The Illinois Vehicle Code prescribes the general width of eight feet for any vehicle or load thereon on the highway but allows for farm loads to a width of 12 feet and portable farm buildings up to a width of 14 feet. Additionally, section 15—101(b) provides a specific exemption for implements of husbandry, which would include cultivators. Section 15—101(b) states in relevant part:

> "The provisions of this Chapter governing size, weight and load do not apply to *** implements of husbandry temporarily operated or towed in a combination upon a highway provided such combination does not consist of more than 3 vehicles ***." (Ill. Rev. Stat. 1987, ch. 95 1/2, par. 15—101(b).)

Thus, the temporary transport of wide loads, such as the cultivator, upon the public highways not only was contemplated by the State but also was specifically authorized.

■■ To establish strict liability in tort it is not sufficient that plaintiff prove the product was dangerous; he must prove it was unreasonably dangerous, or in other words, not reasonably safe. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 83.) If the allegedly defective or unreasonably dangerous condition of a product does no more than furnish a condition by which the injury is made possible and that condition causes any injury by the subsequent act of a person, the two are not concurrent, and the defective condition is not the proximate cause of one's injury. (*Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 365; *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 127.) Proximate cause can only be established when there is a rea-

sonable certainty that the defendant's acts caused the injuries. *Broussard v. Houdaille Industries, Inc.* (1989), 183 Ill. App. 3d 739, 744-45.

■■ Here, it was apparent that the encroachment of the cultivator into the oncoming lane of traffic was dangerous. The danger it presented was not unreasonable, however, as it was neither latent nor concealed; it was obvious to anyone who came in contact with it. It was also obvious that injury was likely to occur if another vehicle collided with the cultivator. Therefore, the condition of the cultivator in its transport mode did no more than furnish the condition by which the injury to decedent was made possible. Moreover, the condition would not have caused any injury to decedent but for decedent's own act of veering into Boehne's traffic lane, prior to the collision, or by Boehne's act of electing to transport the cultivator over the overpass, even though he knew that the cultivator would extend into the oncoming traffic and that alternate routes existed.

We conclude that the cultivator was not unreasonably dangerous and that, based upon this factual showing, the trial court acted properly in entering summary judgment in Deere's favor.

Accordingly, we affirm the judgment of the circuit court of Kane County.

Affirmed.

McLAREN, J., concurs.

JUSTICE REINHARD, dissenting:

I respectfully dissent from the majority opinion for several reasons. First, I believe summary judgment was improperly granted in favor of Deere because there exists a question of material fact as to whether the cultivator, while being transported on the highway, was unreasonably dangerous. To maintain successfully a strict liability action against the manufacturer of an allegedly defective product, a plaintiff must prove that the injury or damage resulted from the condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111.) A product may be found unreasonably dangerous by virtue of a physical flaw or imperfection in the product, a design defect, or a failure of the manufacturer to warn of the danger or to instruct in the proper use of the product. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 155.) The question of whether a product is defective under any of these criteria, and therefore unreasonably dangerous, is ordinarily

one of fact for the jury. *Renfro*, 155 Ill. App. 3d at 155.

Here, plaintiff has sought to demonstrate that the cultivator was unreasonably dangerous by alleging that the design was defective and also that the manufacturer failed to provide adequate warnings. The evidence introduced by Deere in its summary judgment motion demonstrates that the cultivator, without the harrow, was a width of 16 feet when folded up in its transportation mode and that some roadways in Illinois are of such a width that the cultivator would necessarily protrude into the oncoming lane of traffic when transported on those more narrow roadways. Such facts, at the very least, raise a material question as to whether the cultivator, as designed, was unreasonably dangerous for at least one of its intended functions, transportation from one field to another over public roadways.

While it may very well be that the fact that the cultivator was designed at a width which would necessarily result in its protruding into the oncoming lane of traffic under certain circumstances would not necessarily result in its being unreasonably dangerous if such danger were open and obvious or if adequate warnings were affixed to it, both questions raise material issues of fact which would also preclude summary judgment in this case. Arguably, in some circumstances the cultivator, while protruding into the oncoming lane of traffic, would be visible to oncoming traffic such that it would not necessarily be an unreasonably dangerous product. On the other hand, were it being transported around a sharp curve in the road, or at night, or over an overpass, as in this case, where an oncoming driver's opportunity to observe it would be substantially limited, it may pose a substantially greater risk to those oncoming drivers exposed to it. Because there are a variety of material questions of fact relevant to the issue of whether the cultivator's protrusion into an oncoming lane of traffic is open and obvious, it cannot be properly concluded as a matter of law that the cultivator was not unreasonably dangerous, and therefore summary judgment was improper.

Additionally, the question of the adequacy of any warnings is also one for the jury in this case. It simply cannot be said, as a matter of law, that there were adequate warnings affixed to the cultivator which would have rendered it a reasonably safe product.

I would also note at this point that neither plaintiff nor the majority raise or discuss whether summary judgment in favor of Deere as to plaintiff's negligence counts was proper. As the issue has not been developed, I will not address it.

I also disagree with the majority's acceptance of Deere's argument that the allegedly defective condition of the cultivator did no more than furnish a condition by which the injury was made possible. The crucial

question in this case is whether the alleged defect in the cultivator, its 16-foot transport width, proximately caused the injury to plaintiff's decedent. The issue of proximate cause is ordinarily a question of fact for the jury. (*Renfro*, 155 Ill. App. 3d at 157.) Here, the cause of the accident is uncertain, and material fact issues exist in this regard. For the foregoing reasons, summary judgment for Deere was inappropriate.