JUDITH ANN MARECI, Plaintiff-Appellant, *v.* GENERAL MOTORS *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 78-1538

Opinion filed November 5, 1980.—Modified on denial of rehearing February 4, 1981.

Nat P. Ozmon and John B. Adams, both of Anesi, Ozmon, Lewin & Associates, of Chicago, for appellant.

Francis D. Morrissey, Thomas R. Nelson, John T. Coleman, and Charles B. Lewis, all of Baker & McKenzie, of Chicago, for appellees.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

On March 27, 1968, the plaintiff, Judith Ann Mareci, suffered personal injuries when the automobile which she was driving accelerated, went off the road and crashed into a brick building. The plaintiff brought this action against General Motors and one of its divisions, Rochester Products, alleging that they were strictly liable in tort because a defect in the design of the accelerator cable and/or the carburetor in her automobile caused the accident. The plaintiff further alleged that as a result of manufacturing defects, said products were not reasonably safe.

William Schvetz and J. Boin, individually and d/b/a/ Carmen-Lincoln Citgo Service (Citgo), the installers of the carburetor, also were named as defendants in the strict liability count. Count II alleged that these latter defendants were negligent in the servicing of the vehicle. Citgo filed a counterclaim against General Motors and Rochester Products and a third-party complaint against Car Care, Inc., from whom it purchased the carburetor.

At the close of the plaintiff's case the trial court entered a directed verdict in favor of all of the defendants. The plaintiff appeals.[1]

On March 27, 1968, at approximately 5:30 p.m. the plaintiff was traveling west on Kennedy expressway in her 1965 Oldsmobile convertible. She exited at River Road (north) and was driving between 25 and 30 miles per hour. She testified that her car began to "hesitate," and she pressed the accelerator pedal to the floor. When the car began to accelerate, she removed her foot from the pedal. The car, however, continued to accelerate. Although the plaintiff lifted the accelerator pedal off the floor, the car did not slow down. At one point it was traveling 100 miles per hour. With her right hand the plaintiff reached down to the floor and discovered that the bar underneath the accelerator pedal was stuck to the floor. The plaintiff stated that she applied her brakes in an effort to slow down the car, but the car began to sway. She observed other vehicles ahead of her on the road and drove off the road into a vacant lot. The car went through a billboard, hit a parked car broadside and ultimately crashed into a brick building. The plaintiff's chest and head hit the steering wheel and she lost consciousness.

The plaintiff further testified that she purchased her car new in 1965. In 1967 the car began to hesitate upon acceleration. She took the car to Citgo, where Schvetz informed her that she should replace the carburetor. She

---

[1] The defendants, William Schvetz and J. Boin, individually and d/b/a Carmen-Lincoln Citgo Service, have not filed a brief as appellees in this court.

instructed him to install a new carburetor and presumed that he did. Two weeks later she returned the car to Citgo for servicing with the same complaint. In February of 1968 she again returned to Citgo because of a recurrence of the hesitation problem. The plaintiff observed Schvetz make adjustments to the carburetor.

The plaintiff's attorney advised the court that Dr. Norman Dobin, the plaintiff's doctor, was hospitalized the evening before he was to testify. The attorney stated that the witness would be hospitalized for at least one week and made a motion for a continuance, which was denied. The trial court also denied the plaintiff's subsequent motion for mistrial.

The plaintiff called William Schvetz as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). He testified that in August of 1967 he installed in the plaintiff's automobile a Rochester carburetor which was purchased from Car Care, Inc. To the best of his knowledge it was a new carburetor; however, it would require an expert to determine the difference between a new and a rebuilt carburetor by appearance. After he installed the carburetor, Schvetz drove the automobile and ascertained that it operated properly. Schvetz denied receiving any complaints from the plaintiff or making adjustments on the carburetor subsequent to its installation.

The plaintiff called Davis Flesher, an employee of the Oldsmobile division of General Motors, as an adverse witness under section 60 (Ill. Rev. Stat. 1977, ch. 110, par. 60). Flesher was asked to examine the carburetor purportedly removed from the plaintiff's automobile. He identified it as a Rochester rebuilt carburetor containing parts manufactured by Rochester, as well as a numbr of replacement parts. Flesher testified that the accelerator pump rod and the throttle stop arm were Rochester parts and, except for a bend in the throttle stop arm, were in accordance with Rochester's original design.

Marvin Salzenstein, a consulting engineer, testified that on May 3, 1968, he went to 5521 River Road in Rosemont to inspect the plaintiff's automobile. As part of this inspection, Salzenstein examined the carburetor. The defendants objected to his testimony on the basis that no proper foundation was presented to establish that the carburetor was in the same condition on May 3 as it was on March 27, the date of the accident. The court sustained the objection.

In an offer of proof Salzenstein testified that he believed the carburetor was in the same condition on May 3 as it was on March 27. He based this opinion on the fact that the pattern of grease and dirt deposits on the carburetor was comparable to other parts of the automobile, on the fact that there was no evidence of tool marks on the carburetor and on the fact that all of the connections to the carburetor were intact.

Salzenstein further testified during the offer of proof that with one exception the accelerator pump rod of the carburetor was in accord with Rochester's specifications. He explained that in the plaintiff's carburetor,

there was 6/1000 of an inch clearance between the throttle lever and the pump rod. The specifications, however, required 100/1000 of an inch clearance. Salzenstein concluded that the inadequate clearance caused the throttle lever and the pump rod to interfere with each other and that this condition existed at the time the carburetor was manufactured. He stated that neither the accident nor "the way the push [*sic*] rod had been handled" would have caused the inadequate clearance.

In response to a hypothetical question which set forth the plaintiff's version of the occurrence, Salzenstein stated he had an opinion concerning the cause of the accident. He concluded that when the plaintiff stepped on the pedal for acceleration, the throttle lever stuck in an open position because of the interference of the pump rod and the throttle lever. As a result, the automobile became uncontrollable. Salzenstein concluded that this pump rod's design and manufacture were defective and unreasonably dangerous.

At the close of the plaintiff's case the trial court directed verdicts in favor of all the defendants.

The plaintiff appeals contending that the trial court erred (1) in sustaining the defendants' objections to the testimony of the plaintiff's expert witness; (2) in denying the plaintiff's motion for a continuance when the plaintiff's medical witness was unable to testify, and (3) in directing a verdict in favor of the defendants.

The plaintiff argues that Salzenstein's testimony concerning the condition of the pump rod was admissible evidence. Although Salzenstein did not examine the pump rod until approximately five weeks after the accident, he was prepared to testify that the pattern of dirt and grease deposits plus the absence of evidence of tool marks or tampering indicated that the carburetor was in the same condition on the date of examination as it was on the date of the accident. The plaintiff asserts that because there was reasonable evidence to show that the pump rod had not been altered, a sufficient foundation existed for Salzenstein's testimony. She cites several cases to support this conclusion.

In *Gass v. Carducci* (1962), 37 Ill. App. 2d 181, 185 N.E.2d 285, the plaintiff fell from a moving automobile in which she was a passenger when the door suddenly opened. In her action against the owner of the automobile the plaintiff alleged that there was a weakness in the door's locking mechanism. A repairman who examined the door two weeks after the accident testified that the latch spring was weak and that this condition existed for at least a year prior to his examination. On appeal the court held that this testimony concerning the weakness of the spring was properly admitted. The court noted that the witness' testimony was uncontradicted and concluded that where the nature of the defect and the surrounding circumstances are such as to allow a reasonable inference that the defect subsequently established existed at the time of the accident, such evidence is admissible. See also *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1974), 21 Ill. App. 3d 510, 316 N.E.2d 255, *aff'd on other grounds* (1975), 62 Ill.

2d 77, 338 N.E.2d 857; *Noncek v. Ram Tool Corp.* (1970), 129 Ill. App. 2d 320, 264 N.E.2d 440.

In *Grand Trunk Western R.R. Co. v. M. S. Kaplan Co.* (1963), 43 Ill. App. 2d 230, 193 N.E.2d 456, a train derailed after it allegedly ran over scrap which had fallen from an earlier train operated by one of the defendants. An agent of the plaintiff inspected a gondola used in the defendants' train two or three weeks after the derailment and discovered large holes in its bottom through which scrap might easily have fallen. In its action for damages the plaintiff offered to prove through this witness that the perimeters of the holes in the gondola were worn and weather stained and of the same appearance as the rest of the floor. The trial court sustained the defendants' objection to this evidence.

This ruling was reversed on appeal. The court held:

> "Whether evidence of a condition properly 'relates backward' depends upon the character of the condition itself, whether permanent or transitory; upon the apparent likelihood of intervening alteration, through natural forces or human interference; and finally upon the length of time which the inference of unchanged condition must span. [Citation.]" (43 Ill. App. 2d 230, 238-39.)

The court found the inference reasonable and sufficient for admissibility. See also *Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660.

A factual situation similar to the instant case existed in *Ritson v. Don Allen Chevrolet* (1975), 233 Pa. Super. Ct. 112, 336 A.2d 359. In that case the plaintiff was injured when the engine of his automobile continued to race after he released the accelerator pedal. The plaintiff filed suit against the seller alleging that it was strictly liable in tort because a defect in the motor mounts caused the accident. The trial court refused to permit a mechanic who examined the automobile three weeks after the accident to testify concerning the alleged defect. In an offer of proof the witness testified that because of the condition of the motor mounts and the presence of a buildup of grease and oil, he concluded that the motor mounts had not been tampered with since the time of the accident. Thereafter, because the plaintiff presented no evidence of a defect, the trial court granted the defendants' motion for a compulsory nonsuit. The reviewing court reversed and remanded for a new trial. It held that the witness testified to sufficient facts concerning the condition of the motor mounts so that the issue should have been submitted to the jury.

■■ In the case at bar we agree with the plaintiff that the nature of the alleged defect and the surrounding circumstances permit a reasonable inference that the pump rod was in the same condition when Salzenstein examined it as it was on the date of the accident. Salzenstein testified in the offer of proof that the carburetor was manufactured with an insufficient clearance between the throttle lever and the pump rod. He additionally asserted that there was no evidence of tampering with the carburetor. One can reasonably conclude that no one removed the carburetor and inserted an allegedly defective replacement subsequent to the accident.

The cases cited by the defendant are distinguishable. In *Rotche v. Buick Motor Co.* (1934), 358 Ill. 507, 193 N.E. 529, the supreme court held that testimony concerning the condition of cotter pins in the brake mechanism of plaintiff's automobile several weeks after an accident should have been excluded. The court held that ample opportunity existed for someone to tamper with the pins, which could be removed in a few moments.

In *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275, a jury returned a verdict against the defendant-manufacturer which allegedly delivered a storage tank without a plug for the bottom drain. The tank was placed on the purchaser's lot for approximately three months. Subsequently, the tank was installed and propane gas was placed into it. When the gas escaped from the bottom of the tank the tank exploded. The supreme court held that the manufacturer was entitled to judgment notwithstanding the verdict because there was no direct evidence that there was no plug in the drain or accompanying the tank when it was delivered. The court noted that there was also no evidence to support an inference that the tank remained in the same condition from the date of delivery to the date of the explosion. Citing *Rotche*, the court concluded that there was ample opportunity for the plug to have been lost or removed while standing on the purchaser's storage lot for almost three months.

In *Jines v. Greyhound Corp.* (1965), 33 Ill. 2d 83, 210 N.E.2d 562, the plaintiff was a passenger in a stalled automobile which was struck by the defendant's bus. In response to the defendant's contention that the plaintiff was guilty of contributory negligence, the plaintiff testified that he and his companions were unable to push the stalled car off the roadway as a wheel brake appeared to be "frozen." The plaintiff presented an expert witness who had examined the automobile approximately two months after the accident. The witness testified that the brake drum on the left rear wheel was locked or "frozen solid."

Citing *Rotche* and *Harris*, the supreme court held that the testimony of the expert witness was inadmissible because of the plaintiff's failure to show with reasonable certainty that the condition of the brake drum when examined by the witness was the same as it was prior to the accident. The court noted that as a result of the collision the automobile was thrown off the road and partially destroyed by fire. Thereafter, it was moved twice and the rear wheels were pulled over several miles of pavement. The automobile was left in open lots unattended from the time of the accident until the time of the expert's examination.[2]

In both *Rotche*, which involved a missing pin, and *Harris*, which involved a missing plug, the supreme court noted that a person could easily have removed or tampered with the missing item. This was not the situation in the instant case where the alleged defect was the insufficient clearance between two components of the carburetor. In *Jines* the wheel which

---

[2] The court also noted that the brake drum, which was in the custody of the plaintiff, was not produced at the trial for the reason that it had been lost or misplaced.

contained the allegedly defective brake drum was pulled over several miles of pavement after the accident. In the instant case Salzenstein testified that neither the accident nor any handling of the carburetor subsequent to the time it was manufactured was responsible for the inadequate clearance.

As we have previously discussed, Salzenstein's testimony presented a reasonable inference that there was no change in the condition of the carburetor, and we believe that the trial court erred in excluding his testimony. ■■ If the trial court had admitted the testimony of Salzenstein, it would not have entered a directed verdict in favor of all of the defendants on count I of the complaint. The plaintiff had alleged that the defendants were strictly liable in tort because of a defect in the design and manufacture of the pump rod. In order to impose strict liability upon the manufacturerer or the seller of the product, it was necessary for the plaintiff to prove that her injury resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control. *Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 383 N.E.2d 951; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

Salzenstein was prepared to testify that there was an insufficient clearance between the throttle lever and the pump rod and that this condition existed at the time the carburetor left the manufacturer. He explained that the amount of clearance between the two parts was less than the amount required in Rochester's specifications. Moreover, Salzenstein concluded that this unreasonably dangerous condition caused the throttle lever to stick in an open position, thus causing the plaintiff's accident. Viewing this evidence most favorable to the plaintiff, we cannot say that the evidence so overwhelmingly favors the defendants that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

We find, however, that the trial court correctly entered a directed verdict in favor of Citgo on count II of the complaint. The plaintiff presented no evidence to show that Citgo negligently installed the carburetor or failed to test it subsequent to its installation.

For the foregoing reasons that portion of the order of the Circuit Court of Cook County which directed a verdict in favor of Citgo on count II of the complaint is hereby affirmed. That portion of the order which directed a verdict in favor of all the defendants on count I is hereby reversed, and this matter is remanded for a new trial.

In view of the above holding it is not necessary for us to consider the plaintiff's assertion that the trial court abused its discretion in refusing to grant a continuance when her medical witness was hospitalized.

Affirmed in part; reversed in part and remanded for a new trial.

McNAMARA and SIMON, JJ., concur.