JESUS NUNEZ, Plaintiff-Appellant, v. LEONARD HORWITZ, d/b/a Liberty Auto, Defendant-Appellee.

First District (5th Division)   No. 1—88—3070

Opinion filed November 2, 1990.

Jane A. Ready, of Albert Brooks Friedman, Ltd., of Chicago, for appellant.

Maris V. Lidaka, of Stern & Rotheiser, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Jesus Nunez, brought this action against the defendant, Leonard Horwitz, d/b/a/ Liberty Auto (hereinafter Liberty Auto), alleging that Horwitz or one of his employees negligently repaired Nunez' automobile thereby causing his personal injuries. Nunez appeals from an order of the circuit court of Cook County granting a directed verdict in Horwitz' favor. On appeal, Nunez contends: (1) the trial court improperly directed a verdict in favor of Horwitz; and (2) the trial court erred in denying his request for attorney fees pursuant to Illinois Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)). On cross-appeal, Horwitz contends that in the event of a reversal, the discovery sanction imposed by the trial judge was unwarranted and should be set aside. We affirm the judgment of the trial court.

On October 3, 1981, the plaintiff, Jesus Nunez, brought this action against several defendants, each of whom was ultimately dismissed by the trial court except for the defendant Leonard Horwitz. The count of the complaint relevant to this appeal alleged that in November 1979, Nunez brought his car to Liberty Auto, then owned and operated by defendant Horwitz, for repairs to the "sheet metal portion of his automobile." It further alleged that Horwitz or one of his employees improperly connected the automobile's radiator hose, and, as a result, the hose disconnected when Nunez was working under the hood of his automobile in August 1980 and sprayed burning antifreeze fluid over his body. Nunez' complaint sought damages for the injuries caused by Horwitz' alleged negligence.

On October 11, 1984, Nunez amended his complaint to include an additional count alleging a theory of res ispa loquitor. Horwitz filed a motion to dismiss the res ipsa count which the trial court granted for the reason that the allegations in plaintiff's complaint conceded that Nunez was in possession and exclusive control of the car for more than eight months prior to the occurrence. The propriety of the dismissal of the res ipsa count is neither addressed nor challenged in this appeal.

On May 17, 1985, Nunez served Horwitz with a notice of deposi-

tion and a request to produce "work orders, work records of the mechanics, pay records of the mechanics of November 15, 1979, and any and all work orders for the Liberty Auto shop for that week." At the deposition on May 24, 1985, Horwitz represented that he had the documents "down at the shop," referring to Liberty Auto, and promised to forward the requested documents to Nunez.

On July 22, 1985, Nunez, who still had not received the documents, wrote a letter to Horwitz to remind him that he was required to produce all records generated by the repair of Nunez' automobile. In response, Horwitz stated that Liberty Auto transferred the "payroll records" to Howard Yanes, his stepson and Liberty Auto's new owner as of August or September 1984. However, when Nunez' counsel contacted Yanes by phone, Yanes denied having any records related to the car repairs done on Nunez' car, an assertion which Yanes later affirmed by an affidavit filed in February 1986. On August 30, 1985, Nunez filed a motion to compel discovery again demanding that Horwitz produce the documents. On April 18, 1986, Horwitz filed an affidavit of compliance with discovery attaching copies of employee pay records and stated besides these pay records, the only other record relevant to the request to produce was the Allstate estimate which was used as a "work order."

On July 20, 1987, pursuant to court order, Horwitz was redeposed. At this deposition, Horwitz clarified that besides the payroll records and insurance estimates, the only other applicable records which he would have kept were auto parts receipts reflecting what parts were purchased to repair the damaged cars. Horwitz went on to state that he routinely discarded such receipts after the lapse of 1½ to 2 years.

On August 24, 1987, pursuant to Illinois Supreme Court Rule 219, Nunez filed a motion for discovery sanctions including a request for attorney fees incurred as a result of the discovery violation. In granting this motion for sanctions, the trial court entered an order striking any pleading by which defendant Leonard Horwitz, d/b/a/ Liberty Auto, denies that he performed any work on the radiator or radiator hoses of the plaintiff's automobile and granting summary judgment as to that issue. As a result of this ruling, Horwitz was precluded from denying that he or any of his agents, assignees, or employees worked on the radiator or its hoses. The court reserved the issue of attorney fees until after the trial was completed.

On September 28, 1987, Horwitz requested a rehearing on the trial court's order striking certain pleadings and granting partial summary judgment. In response, the trial court affirmed its earlier order,

stating that the defendant "showed a deliberate and continuous disregard of the Court's authority" by destroying the auto parts receipts.

The trial began on September 29, 1988. The plaintiff, Nunez, testified that in November of 1979, he brought his 1979 Camaro to Liberty Auto for repairs. He further confirmed that his insurance carrier, Allstate, prepared an estimate detailing the needed repairs which he transmitted to Liberty Auto.

He testified further that on August 20, 1980, several months later, he raised the car's hood to pour windshield cleaning fluid into its reservoir. As he was closing the hood, the radiator hose disconnected at its attachment to the radiator and sprayed boiling antifreeze solution across the anterior of Nunez' body. There is no dispute to the severity of Nunez' injuries.

Horwitz testified as an adverse witness. He recalled seeing the 1979 Camaro in his shop and stated that he did body work on the front left fender of Nunez' car. He stated that he only employed "body men" and not mechanics at Liberty Auto. Horwitz then testified that he sold the business to Howard Yanes in 1986. When asked what happened to "bills" for auto parts ordered in 1979, he replied that "they were done away with in 1986—'85." But Horwitz then corrected himself by clarifying that he "dissolved" all records in 1984 when he sold the business. Over objection, he was again asked what happened to the 1979 "bills for [auto] parts." Horwitz replied that he kept these bills for "three years," meaning from 1979 thru 1981. In determining what repairs were needed on a particular car, Horwitz stated that he used the insurance company estimates "90 percent of the time."

Howard Yanes testified that he bought Liberty Auto from his stepfather, the defendant, in August 1984. Yanes stated that when first asked the whereabouts of the documents, he believed that he did not have these documents in his "personal possession." He realized, however, that perhaps records were stored in the boxes left on the auto shop's premises so he brought these boxes to Horwitz' home in December 1984. This was the only time, Yanes stated, that the records were in his "personal possession." He never looked inside the boxes, because he "had no need to" and never had any personal knowledge as to what aspect of the business these records pertained to.

At the close of the plaintiff's case, Horwitz moved for a directed verdict arguing that the plaintiff failed to establish a *prima facie* case of negligence. The trial court then examined the Allstate insurance estimate, evidence relied upon by both parties. It was the trial court's

uncontested conclusion that this estimate did not contain anything relating to radiator repairs. The trial court noted that although Horwitz was precluded from denying that he worked on the radiator or its hose, Nunez nonetheless still had the burden to establish that Horwitz negligently performed the repairs which caused Nunez' injuries.

For these reasons, the trial court directed a verdict stating that Nunez presented no proof of causation to tie defendant to his injuries. The trial court thereafter denied Nunez' motion for attorney fees which it had previously taken under reservation.

OPINION

DIRECTED VERDICT

On appeal, plaintiff contends that the trial court erroneously directed a verdict in favor of the defendant, Horwitz. It is well established in Illinois that a trial court should grant a motion for a directed verdict for a defendant at the close of the evidence if "all of the evidence, when viewed in its aspect most favorable to the *** [plaintiff], so overwhelmingly favors [defendant] that no contrary verdict *** could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 514.) With respect to negligence actions, the "question of the absence or existence of negligence should be resolved as a question of law and a verdict directed only when the facts are such that there [can] be no difference in the judgment of reasonable men as to the inferences to be drawn from the facts." *Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 968-69, 424 N.E.2d 1279, 1283.

Basic tort law mandates that to establish a *prima facie* case of negligence and thereby withstand a motion for a directed verdict, the plaintiff must introduce evidence showing that (1) the defendant owed a duty of care to plaintiff; (2) the defendant breached that duty; (3) that breach was the proximate cause of plaintiff's injury; and (4) the plaintiff sustained damages. (W. Keeton, Prosser & Keeton on Torts §30, at 164-65 (5th ed. 1984).) In the instant case, Nunez had to prove not only that Horwitz worked on his car's radiator or its hose but also that he performed the repairs negligently and that act of negligence caused his injuries.

It is undisputed that Nunez contracted with Horwitz to repair body damage on the front left section of Nunez' car. To establish that Horwitz' duty extended to the repair of the radiator, Nunez must further establish that Horwitz did in fact work on Nunez' car radiator or at least undertook its repair. Although Nunez never introduced any

such evidence indicating radiator repairs were performed, Horwitz was precluded from denying that fact as a result of the discovery sanction imposed by the trial judge. However, the trial judge's ruling on the motion for discovery sanctions established only that Horwitz had a duty to perform the work on the radiator in a safe and a reasonable manner. That ruling neither proved nor implied that Horwitz or one of his employees breached this duty by performing the work improperly. The burden to prove defendant's breach of duty still remained upon Nunez, who failed to introduce any evidence to the nature or quality of the work performed on the radiator.

■ Nunez contends that because Horwitz' testimony concerning the whereabouts of the auto parts receipts was equivocal and replete with uncertainties and apparent contradictions, the trial court should have submitted this case to the jury. Any questions concerning Horwitz' credibility cannot replace Nunez' burden of proving the elements of his *prima facie* case of negligence. Even if Horwitz' credibility were to be totally disregarded, Nunez would still be lacking proof of breach of duty and causation, the burden of which still rested upon him.

■ Nunez contends that Horwitz' breach of duty should be deduced inferentially from the alleged fact that Liberty Auto would have been the last shop to have worked on the radiator prior to the occurrence on August 20, 1980. This contention is tantamount to an assertion of a *res ipsa loquitor* theory. However, as previously noted, Nunez' *res ipsa loquitor* count was correctly dismissed by the trial court and no appeal from that dismissal was taken. We fully agree with the reasoning of the trial court in disallowing the *res ipsa* count since there was a lapse of approximately nine months between defendant's alleged repairs and the date of Nunez' injuries, during which time Nunez, not Horwitz, was in possession and control of the automobile. (See, *e.g., Poole v. University of Chicago* (1989), 186 Ill. App. 3d 554, 542 N.E.2d 746, *appeal denied* (1989), 128 Ill. 2d 672, 548 N.E.2d 1078.) Moreover, as the trial court further noted, although Nunez argues that Liberty Auto was the last to perform radiator repairs, he never testified or introduced evidence to establish that fact. Accordingly, the occurrence of Nunez' injury cannot give rise to any inference of negligent causation on the part of the defendant.

The circumstances presented by this case are similar to those present in *Mareci v. General Motors* (1980), 90 Ill. App. 3d 335, 413 N.E.2d 34. There the court affirmed a directed verdict on the negligence count in favor of the defendant, owner of a service station. Having brought her car to the defendant's station for repairs, the

plaintiff watched the defendant install a new carburetor in her car. She returned twice to the defendant's station to complain that the same malfunction had reoccurred. She then observed the defendant make adjustments to the carburetor. Seven months later, the plaintiff was involved in a car accident caused by the very condition that the defendant was contracted to repair. During the trial, an expert witness testified that defendant had installed a rebuilt carburetor. Nonetheless, at the close of plaintiff's case, the trial court directed verdict for the defendant on the negligence count, simply stating that the plaintiff presented no evidence to show that the defendant negligently installed the carburetor.

▪ Here, too, although by virtue of the discovery sanction Horwitz was precluded from denying that he worked on the radiator several months prior to the occurrence, there was no evidence of any misfeasance in performing these repairs or causal connection between that work and plaintiff's injuries. Thus no breach of duty would be inferable even if we were to assume that Horwitz was the last one to work on the radiator before Nunez sustained his injuries.

ATTORNEY FEES

Nunez next contends that in addition to the grant of the partial summary judgment, the trial court should have also awarded him reasonable attorney fees pursuant to Supreme Court Rule 219(c) because Horwitz willfully and deliberately failed to comply with his request to produce.

▪ Rule 219(c) provides in part that if a party fails to comply with discovery rules, the court, in lieu of or in addition to other remedies, may order the offending party or his attorney to pay the reasonable expenses, including the attorney fees, incurred by any party as a result of the misconduct. (107 Ill. 2d R. 219(c).) However, it is well established that the trial court has broad discretion when imposing sanctions against a dilatory party, and a court of review should not interfere with such discretion absent any clear abuse. (*Savitch v. Allman* (1975), 25 Ill. App. 3d 864, 870, 323 N.E.2d 435, 439.) When considering whether to impose fees and other sanctions, the court should seek to accomplish the objectives of discovery rather than to punish a dilatory party. *Jones v. Healy* (1981), 97 Ill. App. 3d 255, 257, 422 N.E.2d 904, 906.

▪ In the instant case, the trial court denied the plaintiff's motion for attorney fees. In reviewing the surrounding circumstances of this case, we agree that the award of attorney fees was not mandated insofar as the sanctions already imposed against the defendant were

984

sufficiently severe. (See *King v. American Ford Equipment Co.* (1987), 160 Ill. App. 3d 898, 513 N.E.2d 958, *appeal denied* (1987), 117 Ill. 2d 544, 517 N.E.2d 1087.) As noted, the Allstate insurance repair estimate upon which both the plaintiff and the defendant relied failed to indicate any radiator damage which would justify any such repairs. Nevertheless, the trial court sanctioned Horwitz for his destruction of records by precluding him from denying that he repaired the radiator. Thus, notwithstanding that there was a firm indication that no such work was performed or would have been reflected in the aborted records, the court imposed the sanction which gave to Nunez the benefit which he would have received had such records ever, in fact, existed.

We, therefore, hold that the trial court did not abuse its discretion when it denied plaintiff's motion for attorney fees in light of the sanction which it did impose. Since we affirm the judgment in favor of the defendant, we need not address the issues raised by his cross-appeal.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

COCCIA, P.J., and MURRAY, J., concur.