MELVIN SCHULTZ, Plaintiff-Appellant, v. HENNESSY INDUSTRIES, INC., *et al.*, Defendants-Appellees (Mueller Electric Company of Cleveland *et al.*, Defendants).

First District (6th Division)   No. 1—90—3127

Opinion filed November 22, 1991.

Donald A. Kurasch, Ltd., of Chicago (Donald A. Kurasch and Jessica B. Tucker, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Eric Samore and Ellen Martin, of counsel), for appellee Vulcan Tools Company.

Jobin & Flynn, of Chicago (Mark Quinniff, of counsel), for appellee Hennessy Industries, Inc.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff, Melvin Schultz, brought an action against several defendants, seeking recovery for personal injuries sustained while he attempted to use a remote starter switch to start an automobile which had been brought in for repairs to the automotive shop at which plaintiff was employed. Counts III and IV of plaintiff's 10-count complaint, as finally amended, included allegations of negligence and strict liability in tort against Vulcan Tools Company (Vulcan), the distributor of the remote starter switch. In counts VI and VII plaintiff asserted negligence and strict liability in tort against Hennessy Industries, Inc. (Hennessy), the manufacturer of the remote starter switch. Count X

alleged negligence by both Vulcan and Hennessy based upon the theory of *res ipsa loquitur.*

Upon motions filed by Vulcan and Hennessy, the trial court granted summary judgment in favor of the defendants on the negligence and strict liability claims. The court also dismissed with prejudice the count premised upon *res ipsa loquitur.* The court's order disposing of these claims included a statement that there was no just reason to delay enforcement or appeal of this ruling pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Plaintiff has appealed the ruling of the trial court. The other named defendants are not parties to this appeal.

The issues before this court are (1) whether the trial court erred in granting summary judgment in favor of defendants on the negligence and strict products liability claims, and (2) whether the trial court erred in dismissing with prejudice the count premised upon *res ipsa loquitur.*

The record indicates that on September 26, 1984, plaintiff was employed by Cottman Transmissions and was injured while using a remote starter switch to start an automobile which had been parked on the street adjacent to the automotive shop. Plaintiff was standing in front of the car upon which he was working when it started and began to move forward. The car caught plaintiff in his mid-section and propelled him into 47th Street, where he was struck by a passing vehicle, resulting in the severance of his left leg.

Count III of plaintiff's complaint was directed against Vulcan, the distributor of the remote starter switch, and asserted that Vulcan was negligent because (a) it sold and distributed the remote starter switch when it knew or should have known that the switch was defective and could cause injury; (b) failed to inspect the switch to ascertain its condition before selling it to the plaintiff; (c) failed to test the switch to ascertain its condition before selling to its customers, including the plaintiff; and (d) failed to warn its customers and plaintiff of the dangerous condition of the switch.

Count IV was also directed against Vulcan and sought recovery under strict liability, asserting that (a) at the time of the accident, plaintiff was using the switch in a manner for which it was intended and which was reasonably foreseeable; (b) at the time the switch was sold by Vulcan to plaintiff, it was unreasonably dangerous for its intended use in that it was not designed in a manner that would prevent the switch from causing automobiles on which it was used to suddenly move forward; and (c) the defects and unreasonably dangerous condition were present at the time the switch left the control of

Vulcan and said defects in design and unreasonably dangerous condition continued up to and including the time of the accident complained of.

Count VI was directed against Hennessy, the manufacturer of the remote starter switch, and alleged negligence in that Hennessy (a) manufactured, designed, fabricated, and sold the switch in a defective manner inadequate to prevent the switch from causing an automobile to move forward suddenly and without warning; (b) failed to inspect the switch for defects before distribution; (c) manufactured, designed, and fabricated the switch in a defective condition when it knew or should have known that the switch would be unsafe and unfit for its intended use; (d) failed to warn the plaintiff of the danger incident to the foreseeable use of the switch; and (e) failed to furnish adequate safety devices to insure that the switch would not cause automobiles on which it was being used to suddenly move forward.

Count VII was also directed against Hennessy and sought recovery under strict liability, asserting that (a) at the time of the accident, plaintiff was using the switch in a manner for which it was intended and which was reasonably foreseeable; (b) at the time the switch was manufactured and sold by Hennessy, it was defective in design and was unreasonably dangerous for its intended use in that it was not designed in a manner that would prevent the switch from causing automobiles on which it was used to suddenly move forward; and (c) the defects and unreasonably dangerous condition were present at the time the switch left the control of Hennessy and said defects in design and unreasonably dangerous condition continued up to and including the time of the accident complained of.

Count X was directed against both Vulcan and Hennessy and asserted that these two defendants were guilty of negligence based upon the theory of *res ipsa loquitur*. Count X alleged that (a) at the time of the accident, plaintiff was using the switch in a manner for which it was intended and which was reasonably foreseeable; (b) the switch suddenly and without plaintiff's knowledge or any voluntary act on his part started the automobile's engine, causing the automobile to suddenly move forward; and (c) the accident was the type which would not have occurred in the ordinary course of events and in the absence of negligence.

Plaintiff testified at his discovery deposition that at the time of the accident, he was 26 years old, was employed by Cottman Transmissions, and had completed schooling through grade 10, but had no formal training in automobile mechanics. He had worked for various transmission shops where he used remote starter switches in remov-

ing and replacing transmissions, but he did not recall whether he had used remote starter switches to start vehicles. Although it was a rare occurrence for plaintiff to work on a transmission which had been stuck in the "drive" position, he had done so more than once.

Plaintiff testified further that less than 12 months before the accident, he purchased the subject remote starter switch from a Vulcan dealer who came to his place of employment. When the Vulcan dealer delivered the switch to him, it was "wrapped up like in a ball" and was not accompanied by any instructions, warnings, or packaging.

Prior to the occurrence, plaintiff had been cleaning his tools, but he had not cleaned the starter switch. Plaintiff was told by Kathleen Bartunik, the manager trainee at Cottman Transmissions, to bring into the shop a Ford Torino which had been parked on the street in front of the shop, but Bartunik did not give plaintiff any information as to the nature of the problem with the automobile.

When he went out to move the car, plaintiff noticed that the indicator on the column shift of the car was pointed to the "drive" position and that the keys were in the ignition. Plaintiff then asked Bartunik for assistance, and she got into the driver's seat of the car. After she was behind the wheel, plaintiff connected the remote starter switch by attaching both leads to the solenoid. He then told Bartunik to turn the ignition, and he depressed the starter switch button, causing the engine to start. Thereafter, plaintiff disconnected the starter switch by removing the alligator clips from the solenoid. He then closed the hood and told Bartunik to drive the car around the block and into the shop, but Bartunik refused. She then directed plaintiff to pull the car around to the shop.

Plaintiff stated that he had depressed the emergency brake pedal before Bartunik got into the driver's seat. He also indicated that he did not consult any books, brochures, or owner's manual prior to connecting the remote starter switch to the car's engine.

Plaintiff testified further that when Bartunik told him to drive the car into the shop, he reached into the car through the driver's window and turned the ignition off, which caused the engine to stop running. After Bartunik went back into the office, plaintiff attempted to restart the vehicle alone because he could not get anyone to help him. Plaintiff opened the front window on the passenger side and made sure that the emergency brake pedal was depressed and pulled the key partially out of the ignition. Plaintiff then placed the remote starter switch inside the car between the dashboard and the windshield, and he fed the leads through the front passenger window to the engine. He opened up the hood of the car and connected the leads

to the solenoid in the engine. Plaintiff indicated that the button on the remote starter switch was facing the seat and the rear of the vehicle when he placed it on the dashboard.

Plaintiff stated that he then walked around to the front of the car and began to close the hood when he heard the engine start. Plaintiff testified that he never closed the hood, and it never came into contact with the switch cable. Plaintiff then let go of the hood and leaned over to try to disconnect the leads from the solenoid when the vehicle began to move forward, catching him in his mid-section. Plaintiff hoisted himself up over the engine so that his feet were off the ground. As the car moved forward, plaintiff removed the air cleaner and put his hands over the carburetor, causing the engine to stall and the car to stop. After he lowered himself to the ground in front of the car, he was struck by a passing vehicle which severed his left leg.

Plaintiff testified that he had used the subject remote starter switch at least a couple of times before the date of the accident and that he had owned other remote starter switches before he purchased the subject switch.

Plaintiff retained Gordon Cnare as an expert witness in this litigation. At his discovery deposition, Cnare testified that he purchased four different starter switches to compare them to the switch that was in use when the accident occurred. All four of the competing switches came with warnings and operating instructions. Cnare did not examine or test another switch manufactured by Hennessy because Vulcan did not have any switches in stock at the time of Cnare's inquiries and because he learned in June 1987 that Hennessy no longer manufactured remote starter switches. Of the five switches examined by Cnare, the four he purchased plus the one involved in the accident, the one used by plaintiff had the longest leads, allowing the user to place it on a dashboard.

In examining the subject switch, Cnare disassembled it to look at its components. He was of the opinion that the switch was manufactured from components which were not originally intended to be used in a remote starter switch. Cnare requested from Hennessy engineering drawings for this switch, but was told that such drawings did not exist. Hennessy subsequently provided Cnare with assembly drawings for the subject switch. Upon examination of the switch and the assembly drawings, Cnare concluded that the switch was made up of numerous component parts and that many of these components could easily be purchased in a store. Cnare indicated that the design and manufacture of the subject switch raised the possibility that a foreign

object or substance, such as moist dirt, dampness, or a nail, could enter the switch and short out the circuit.

Cnare testified, however, that his examination of the switch revealed no physical evidence to suggest that the circuit had been shorted out at the time of the accident. He stated that when he disassembled the switch he did not observe any foreign object or any moisture in the switch. Cnare stated further that there were no visible markings or residue indicating that some foreign object or substance, such as water, dirt, or a nail, had previously been inside the switch. Cnare could not testify that the circuit had been shorted out and stated that such an opinion would be based upon speculation.

Cnare also testified that given the number of component parts in the switch and the fact that one of the components had metal tabs which were bent over, this might indicate that the parts could loosen and that the tolerances could change. Yet, Cnare was unable to determine if any parts had loosened without engineering drawings reflecting the tightness requirements. Cnare stated, however, that there was no evidence that loose parts caused the subject car to start. Cnare stated that there was no indication that the alligator clips attached to the solenoid had crossed to cause a short circuit.

Cnare was unable to give an opinion as to whether inadequate warnings or instructions were a proximate cause of the plaintiff's accident, but stated that other instructions or warnings might have possibly prevented the accident.

Cnare could find no indication that the subject remote starter switch malfunctioned in any way. He stated that it is not possible to start a car with a remote starter switch if the ignition is in the "off" position and that the car would not start even if a foreign object shorted out the circuit in the switch. Cnare testified that he had no opinion as to why the car started under the circumstances described by the plaintiff.

On March 22, 1990, plaintiff sent Vulcan and Hennessy notices of deposition for the "person with the most knowledge of the occurrence." Plaintiff also sent Rule 201(k) letters demanding responses to his outstanding discovery requests. Vulcan's attorney responded to these requests by informing the plaintiff that the ownership of the corporation had been sold or transferred at least three times since June 1984 and that the corporation had filed for bankruptcy protection under chapter 11 in 1987. Vulcan's counsel indicated that they had been unable to locate a representative capable of providing the necessary responses and a verification thereof.

On June 1, 1990, Vulcan filed a motion for summary judgment, asserting that the plaintiff's claims were premised upon guesswork and speculation and that they had no duty to warn the plaintiff because he was injured in a "freak" accident which was not foreseeable. On June 6, 1990, Hennessy joined in and adopted the motion for summary judgment filed by Vulcan.

Vulcan's motion for summary judgment was set for hearing on June 22, 1990. On June 18, 1990, plaintiff filed motions to compel and for sanctions due to the defendants' failure to comply with written and oral discovery requests. On June 19, 1990, plaintiff filed a motion to strike the defendants' motions for summary judgment. On June 19, 1990, plaintiff also filed a response in opposition to defendants' motions for summary judgment. Plaintiff's response was accompanied by an affidavit under Supreme Court Rule 191(b) (134 Ill. 2d R. 191(b)) executed by plaintiff's attorney which averred that defendants had failed to comply with outstanding discovery requests and that plaintiff believed "that much of the relevant information concerning the manufacture and distribution of the remote starter switch [was] known only to persons either currently or previously employed with the defendants." This affidavit did not set forth the nature of the information sought or what it would show.

On June 22, 1990, the trial court denied plaintiff's motion to strike, his motion for sanctions, and his request for further discovery under Supreme Court Rule 191(b). The transcript of this hearing is not, however, included in the record on appeal. On that date, Vulcan and Hennessy served plaintiff with their responses to the outstanding written discovery previously requested by plaintiff.

On July 6, 1990, plaintiff filed a second amended complaint which was identical to the first amended complaint, except that it added count X, premised upon *res ipsa loquitur*. In July 1990 both Vulcan and Hennessy brought motions to dismiss count X of the second amended complaint, asserting that (a) there were no facts showing that the accident would not ordinarily have occurred in the absence of negligence by the defendants and (b) there were no allegations that the remote starter switch was in the exclusive control of either defendant.

On July 18, 1990, plaintiff filed an additional response in opposition to the motions for summary judgment, asserting that questions of fact existed as to whether (a) the subject switch was unreasonably dangerous in its design; (b) defendants' failure to warn made the switch unreasonably dangerous; and (c) the accident in which he was injured was foreseeable to defendants.

Plaintiff's response to the motions for summary judgment included the affidavit of Lee Rose, a licensed professional mechanical engineer, who averred that the car may have started as a result of "the possibility that the two electrical clips connected to the remote starter switch may have touched one another during the closing of the hood by [the plaintiff]." This affidavit did not, however, specify the evidentiary facts upon which he relied in drawing his conclusions. In addition, this affidavit contradicted the plaintiff's deposition testimony that he never closed the hood after connecting the remote starter switch.

On September 20, 1990, the trial court granted summary judgment in favor of defendants as to counts III, IV, VI, and VII. The court also dismissed with prejudice count X. Plaintiff has appealed these rulings.

We initially consider whether the trial court erred in granting summary judgment in favor of defendants on the negligence and strict products liability claims.

In order to prevail on a claim of common law negligence, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201, 1207.) The concept of proximate cause is the same in both cases of negligence and strict liability in tort, and liability cannot be predicated upon speculation, surmise, or conjecture as to the cause of the injuries. (*Lindenmier*, 156 Ill. App. 3d at 85, 508 N.E.2d at 1207.) Proximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury. *Lindenmier*, 156 Ill. App. 3d at 85, 508 N.E.2d at 1207.

To recover in strict liability in tort, a plaintiff must prove that his injuries resulted from an unreasonably dangerous or defective condition of the product and that the condition existed at the time the product left the manufacturer's control. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 31, 402 N.E.2d 194, 196; *West v. Deere & Co.* (1990), 201 Ill. App. 3d 891, 897, 559 N.E.2d 511, 515.) The fact that an injury has occurred, in and of itself, is insufficient to show the existence of a product defect. (*West*, 201 Ill. App. 3d at 897, 559 N.E.2d at 515.) The plaintiff must prove that his injuries derived from a distinct defect in the product which subjected those exposed to the product to an unreasonable risk of harm. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211, 384 N.E.2d 368, 372; *West*, 201 Ill. App. 3d at 897, 559 N.E.2d at 515-16.) Thus, the plaintiff must establish that the injury

proximately resulted from the defective condition of the product. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

A failure to warn of a product's dangerous propensities can make a product unreasonably dangerous and may serve as the basis for holding a manufacturer or seller strictly liable in tort. (*Woodill*, 79 Ill. 2d at 29, 402 N.E.2d at 196; *Mason v. Caterpillar Tractor Co.* (1985), 139 Ill. App. 3d 511, 518, 487 N.E.2d 1043, 1048.) A duty to warn is imposed only where the injury suffered by the plaintiff was foreseeable by the defendant. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 466, 343 N.E.2d 465, 471; *Mason*, 139 Ill. App. 3d at 518, 487 N.E.2d at 1048.) Foreseeability is established by a determination of what it is "objectively reasonable" to expect, not merely what might conceivably occur. (*Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471.) Thus, an injury is foreseeable if it is "objectively reasonable" to expect the user of the product to be injured in the manner in which the plaintiff was injured. *Mason*, 139 Ill. App. 3d at 518, 487 N.E.2d at 1048.

A plaintiff predicating a products liability action upon a failure to warn must plead and prove that the manufacturer or seller of the product knew or should have known of the danger that caused his injury. (*Woodill*, 79 Ill. 2d at 37, 402 N.E.2d at 199; *Kempes v. Dunlop Tire & Rubber Corp.* (1989), 192 Ill. App. 3d 209, 218, 548 N.E.2d 644, 649.) The determination of whether a duty to warn exists is a question of law and not of fact. *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471; *Mason*, 139 Ill. App. 3d at 518, 487 N.E.2d at 1048.

In the case at bar, plaintiff presented no evidence to establish that the defendants acted negligently in the design, manufacture, or distribution of the remote starter switch or that a defective condition made the switch unreasonably dangerous and proximately caused his injuries. Moreover, plaintiff did not present any evidence which established that the injuries sustained by him were foreseeable by the defendants. In addition, plaintiff failed to present any evidence that the defendants knew or should have known that the remote starter switch could cause a car to start suddenly and unexpectedly even though the switch button had not been depressed and the ignition of the vehicle was in the "off" position but failed to warn of that danger.

Plaintiff's expert witness, Gordon Cnare, testified that he believed the design and manufacture of the subject switch raised the possibility that a foreign object or substance could enter the switch and short out the circuit. Yet, Cnare stated that his examination of the switch revealed no physical evidence to suggest that the circuit had been shorted out at the time of the accident, and he did not observe any foreign object or

moisture in the switch, or any visible markings or residue indicating that some foreign object or substance had previously been inside the switch. Cnare could not testify that the circuit had been shorted out and stated that such an opinion would be based upon speculation.

In addition, Cnare testified that there was no evidence that any of the component parts of the switch had become loose or that loose parts caused the subject car to start. Cnare also stated that there was no indication that the alligator clips attached to the solenoid had crossed to cause a short circuit.

Cnare was unable to give an opinion as to whether inadequate warnings or instructions were a proximate cause of the plaintiff's accident. Although he stated that other instructions or warnings might have possibly prevented the accident, Cnare acknowledged that this conclusion was based upon speculation.

Cnare could find no indication that the subject remote starter switch malfunctioned in any way and stated further that it is impossible to start a car with a remote starter switch if the ignition is in the "off" position and that the car would not start even if a foreign object shorted out the circuit in the switch. Cnare testified that he had no opinion as to why the car started under the circumstances described by the plaintiff.

The affidavit of Lee Rose averred that the car may have started as a result of "the possibility that the two electrical clips connected to the remote starter switch may have touched one another during the closing of the hood by [the plaintiff]." This affidavit contradicted the plaintiff's deposition testimony that he never closed the hood after connecting the remote starter switch. In addition, Rose's affidavit did not specify the evidentiary facts upon which he relied in drawing his conclusions.

Affidavits in support of or in opposition to a motion for summary judgment shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim is based; and shall not consist of conclusions but of facts admissible in evidence. (134 Ill. 2d R. 191.) Because Rose's affidavit contradicted plaintiff's deposition testimony that he never closed the hood after connecting the remote starter switch, it was based upon speculation. In addition the affidavit did not specify the evidentiary facts upon which Rose relied in drawing his conclusions. Consequently, it was insufficient to defeat the defendants' motion for summary judgment.

It is evident that all of the expert testimony presented by plaintiff as to the cause of the accident and the dangerous condition of the remote starter switch was based purely on speculation and conjecture. Expert testimony based on speculation, guess, or conjecture is insufficient

to avoid summary judgment. *Mason*, 139 Ill. App. 3d at 518, 487 N.E.2d at 1048.

We find that there is nothing in the record from which it can be inferred that any of the alleged breaches of duty by defendants in manufacturing or distributing the remote starter switch proximately caused the plaintiff's injuries. The mere possibility that the design of the switch might have permitted a short circuit by a foreign object or substance or that a warning might have prevented the injury to the plaintiff is insufficient to establish a causal relationship between defendants' alleged negligence and plaintiff's injuries. See *Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 620, 510 N.E.2d 1176, 1179.

A motion for summary judgment should be granted when the pleadings, depositions, admissions, and affidavits establish that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2–1005; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402.) Considering the entire record in a light most favorable to the plaintiff, we hold that the plaintiff failed to establish a *prima facie* case on his claims for negligence and strict liability. Consequently, the trial court properly granted summary judgment in favor of the defendants on plaintiff's claims under negligence and strict liability.

■ In opposing the defendants' motions for summary judgment, plaintiff requested additional discovery under Supreme Court Rule 191(b) (134 Ill. 2d R. 191(b)). Yet, the affidavit filed in support of this request did not comply with the requirements of that rule. The affidavit did not set forth what plaintiff's attorney believed the prospective witnesses would testify to if sworn or his reasons for this belief. Rather, the affidavit merely stated that plaintiff believed that much of the relevant information concerning the manufacture and distribution of the remote starter switch was known only to persons either currently or previously employed with the defendants. Plaintiff's counsel did not include in his affidavit the nature of the "relevant information" or how it related to the instant litigation. Consequently, the trial court properly denied plaintiff's request for further discovery under Supreme Court Rule 191(b).

We next address plaintiff's claim that the trial court erred in dismissing with prejudice the count premised upon *res ipsa loquitur*.

The doctrine of *res ipsa loquitur* permits a trier of fact to infer negligence based upon circumstantial evidence when the direct evidence concerning the cause of the injury is primarily within the knowledge and control of the defendants. (*Bernardi v. Chicago Steel Container Corp.* (1989), 187 Ill. App. 3d 1010, 1021, 543 N.E.2d 1004, 1012; *Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill.

App. 3d 856, 862, 403 N.E.2d 470, 474.) When the doctrine is invoked, the plaintiff bears the burden of proving (1) that the occurrence is one that ordinarily does not occur in the absence of negligence, and (2) that the defendant had exclusive control over the instrumentality that caused the injury. *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242, 500 N.E.2d 8, 12.

When these elements are shown, the occurrence itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. (*Dyback*, 114 Ill. 2d at 242, 500 N.E.2d at 12; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305, 307.) Although the plaintiff need not conclusively prove these elements in order to invoke the doctrine, he must present evidence reasonably showing the existence of elements which allow the inference that the occurrence is one that ordinarily does not occur without negligence. (*Dyback*, 114 Ill. 2d at 242, 500 N.E.2d at 12; *Bernardi*, 187 Ill. App. 3d at 1022, 543 N.E.2d at 1012.) Whether the doctrine of *res ipsa loquitur* applies in a particular case is a question of law which must be decided by the trial court. *Imig v. Beck* (1986), 115 Ill. 2d 18, 27, 503 N.E.2d 324, 329.

■ The evidence before the trial court in the case at bar established that the plaintiff had owned the remote starter switch for a period of several months and had used it on more than one occasion prior to the date of the accident. Thus, the plaintiff, and not the defendants, had exclusive control over the switch at the time of the accident. Because plaintiff has not established that defendants exercised exclusive control over the instrumentality that may have caused his injuries, the doctrine of *res ipsa loquitur* is not applicable in the instant case. *Rinck*, 82 Ill. App. 3d at 862, 403 N.E.2d at 474.

Moreover, the doctrine is inapplicable where, as here, the facts as alleged do not necessarily imply negligence on the part of the defendants. (*Rinck*, 82 Ill. App. 3d at 862, 403 N.E.2d at 474.) Where there are several possible causes for the accident, apart from any negligence by defendants, the doctrine of *res ipsa loquitur* cannot be invoked to impose liability upon the defendants. *Rinck*, 82 Ill. App. 3d at 862, 403 N.E.2d at 474.

Plaintiff has argued that the doctrine of *res ipsa loquitur* should apply in the instant case despite the fact that plaintiff exercised exclusive control over the remote starter switch at the time of the accident. Plaintiff correctly asserts that the fact that the defendants did not have control of the instrumentality which caused plaintiff's injuries is not sufficient to defeat a recovery under the doctrine of *res ipsa loquitur* as long as the intervening possession is not of such a nature as to destroy

the inference of negligence. *Wuench v. Ford Motor Co.* (1982), 104 Ill. App. 3d 317, 319, 432 N.E.2d 969, 970; *Kruger v. Newkirk* (1976), 40 Ill. App. 3d 581, 585, 352 N.E.2d 436, 439-40.

We note, however, that the evidence established that the plaintiff had owned the remote starter switch for a period of several months and had used it on more than one occasion prior to the date of the accident. It is certainly possible that while plaintiff owned and used the switch, it was used or damaged in some manner which could have contributed to its alleged failure to function properly. Because the intervening possession of the remote starter switch by the plaintiff presents plausible explanations for the accident other than the negligence of the defendants, we hold that the inference of negligence through *res ipsa loquitur* is inappropriate here. See *Wuench*, 104 Ill. App. 3d at 319-20, 432 N.E.2d at 971; *Nunez v. Horwitz* (1990), 205 Ill. App. 3d 976, 982, 563 N.E.2d 946, 950.

In determining the legal sufficiency of a complaint on a motion to dismiss, the court must accept as true all well-pleaded facts and then determine whether the allegations of the complaint, when interpreted in a light most favorable to plaintiff, are sufficient to state a cause of action against the defendants. (*Rinck*, 82 Ill. App. 3d at 863, 403 N.E.2d at 474.) A cause of action is properly dismissed on the pleadings where it clearly appears that no set of facts can be proved which will entitle the plaintiff to relief. (*Rinck*, 82 Ill. App. 3d at 863, 403 N.E.2d at 474.) Considering the allegations in count X of the second amended complaint in the light most favorable to the plaintiff, it appears that plaintiff has failed to adequately state a cause of action for negligence based upon the doctrine of *res ipsa loquitur*. Consequently, the trial court acted properly in dismissing count X with prejudice.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

RAKOWSKI, P.J., and EGAN, J., concur.