EDWARD CZERKIES, as Trustee under the Edward Czerkies Declaration of Trust dated May 2, 1985, *et al.*, Plaintiffs-Appellees, v. AG ACCEPTANCE CORPORATION *et al.*, Defendants-Appellants.

Third District   No. 3—03—1022

Opinion filed December 9, 2004.

Robert Lindstrom (argued), of Mustain, Lindstrom & Henson, of Galesburg, for appellants.

Marsha Ross (argued), of Douglas W. Schlak & Associates, of New Lenox, for appellees.

JUSTICE SCHMIDT delivered the opinion of the court:

This is a declaratory judgment action in which plaintiffs, Edward Czerkies, as trustee under the Edward Czerkies Declaration of Trust dated May 2, 1985, and Czerkies Limited Partnership, ask the court to declare that their landlord's crop lien has priority over all other liens, including the lien held by defendant AG Acceptance Corporation (AGAC). The trial court found that the plaintiffs' lien had priority and granted plaintiffs' motion for summary judgment. Only AGAC appeals.

## BACKGROUND

AGAC is the holder of a promissory note in the amount of $1.2 million which was executed by William Myre, Sr., William Myre, Jr., Lynda Myre and Melva Myre on March 6, 2000. This promissory note is secured by property owned by the plaintiffs and crops grown by the Myres. AGAC's security interest includes a lien on all crops growing or to be grown by the Myres on the property owned by the plaintiffs and the proceeds thereof. AGAC's lien existed prior to the planting of the 2002 crops.

The plaintiffs are owners of three parcels of farmland that were leased to William Myre, Sr., for the 2002 crop year. The lease ran from March 1, 2002, through February 28, 2003. The total rent of $124,847 for the three parcels was never paid. The plaintiffs have a statutory lien upon the crops grown on the property pursuant to section 9—316 of the Illinois Code of Civil Procedure (735 ILCS 5/9—316 (West 2002)).

A landlord's lien on crops and proceeds created by section 9—316 is a priority lien that secures the payment of rent and the faithful performance of other lease terms. Before July 1, 2001, it was not necessary to file a Uniform Commercial Code (UCC) (810 ILCS 5/1—1 *et seq.* (West 2000)) financing statement with the Secretary of State's office to perfect the lien. The landlord's lien was a priority lien that automatically trumped any other perfected security interests, even those preexisting the landlord's lien. 735 ILCS 5/9—316 (West 2000).

Section 9—316 was amended twice during the relevant time period. The first amendment, effective July 1, 2001, required a landlord to perfect his lien by filing a financing statement with the Secretary of State in order for it to have priority over any other agricultural lien or any security interest filed pursuant to article IX of the UCC. 735 ILCS 5/9—316 (West 2002). This version of the statute was in effect at the time the crops were planted on plaintiffs' property.

A second amendment, effective on August 21, 2002, before the

crops were harvested, deleted the requirement that the landlord must file a financing statement with the Secretary of State in order to perfect the lien. 735 ILCS 5/9—316 (West 2002). Essentially, on August 21, 2002, the law reverted to pre-July 1, 2001, status, and liens created by section 9—316 have priority without the need to file the UCC financing statement.

On January 14 and 28 of 2003, plaintiffs filed UCC financing statements with the Secretary of State.

On January 16, 2003, plaintiffs filed a three-count complaint for declaratory judgment, only two of which are at issue in this appeal. Count II requested the court to enter a finding that plaintiffs' statutory lien takes priority over any other liens on the 2002 crops or proceeds of the crops raised on the three properties owned by the plaintiffs. Count III requested the court to order Cargil, Inc., which accepted the crops grown by Myre and held the proceeds of the sale of the crops, to issue a check to plaintiffs in the sum of $123,387.11, which is the amount of rent due. The trial court granted the plaintiffs' motion for summary judgment on all counts.

## ANALYSIS

### A. Standard of Review

■ Since this case primarily deals with the interpretation of a statute and the granting of summary judgment, the proper standard of review is *de novo. P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 233-34, 703 N.E.2d 71, 75-76 (1998); *Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637, 640 (1997); *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18, 20 (2002).

### B. Lien Priority

■ The crop year at issue is 2002. The crop lien came into existence when the crops were planted in the spring of 2002. Under both versions of the statute, the landlord's lien "shall continue for the period of 6 months after the expiration of the term for which the premises are demised." 735 ILCS 5/9—316 (West 2002). The lease in question ran from March 1, 2002, until February 28, 2003. The lien, therefore, came into existence when the crops were planted in the spring of 2002 and continued until August 31, 2003.

AGAC argues that unless we find that the August 21, 2002, amendment to the statute is retroactive, we must reverse the trial court. We disagree. We need not address the issue of whether the most recent statute should be applied retroactively because the landlord's lien has priority under either version of the statute.

As AGAC admits, the only requirement for the landlord's lien to

have priority under the July 1, 2001, amendment was that the landlord file the financing statement while the lien was in existence. We hold that since the plaintiffs filed a financing statement with the Secretary of State while the lien was in existence, the plaintiffs' lien has priority, even if the July 1, 2001, version of section 9—316 applies.

While we do not necessarily agree that applying the August 21, 2002, amendment, which came into effect while the crops were growing, would be a retroactive application of that statute, we need not decide that issue in light of our holding here.

### B. Summary Judgment

■ Next, AGAC claims that the plaintiffs' motion for summary judgment should not have been granted because there remains a material issue of fact. AGAC claims that the plaintiffs did not establish that the money in question actually came from crops grown on plaintiff's property. We disagree.

The plaintiffs submitted two affidavits in support of their motion for summary judgment to establish that five checks issued by Cargil, Inc., in the amount of $123,387.11 represent proceeds from the sale of crops grown by the Myres on the plaintiffs' property in 2002. The first affidavit, by Edward Czerkies, states that the Myres farmed his land in 2002, that the rent had not been paid and that he was given five checks issued by Cargil, Inc., to the Myres, AGAC and Edward Czerkies or the Czerkies Limited Partnership for the rent totaling $123,387.11. The checks were attached to the affidavit as exhibits. Czerkies stated that he was unable to cash the checks because they were not endorsed by all the payees. The second affidavit, by William Myre, Sr., establishes that the five checks represent the proceeds from the grain he harvested from the plaintiffs' farms in the fall of 2002. Under Supreme Court Rule 191(b), an affidavit is taken as true unless it is opposed by sworn testimony or an affidavit complying with Rule 191(b). 145 Ill. 2d R. 191(b); *Wooding v. L&J Press Corp.*, 99 Ill. App. 3d 382, 385, 425 N.E.2d 1055, 1058 (1981).

AGAC failed, however, to submit any evidence other than an affidavit of its attorney to refute that the checks in question actually represent the proceeds from the sale of crops grown on the plaintiffs' property in 2002. An affidavit signed by a party's attorney which makes general assertions about further discovery and does not state what a witness or party will testify to if sworn and is not signed by a party is insufficient to refute an affidavit in support of a summary judgment motion. *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064, 599 N.E.2d 1183, 1192 (1992); *Schultz v. Hennessy Industries, Inc.*, 222 Ill. App. 3d 532, 543, 584 N.E.2d 235,

243 (1991). Plaintiffs' affidavits are therefore uncontroverted and must be taken as true. *Wooding v. L&S Press Corp.*, 99 Ill. App. 3d at 385-86, 425 N.E.2d at 1058.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

HOLDRIDGE, P.J., and SLATER, J., concur.